CITY OF WICHITA FALLS, TEXAS, v. R. C. BOWEN, TRUSTEE.

No. A-22. Decided March 15, 1944.
Rehearing overruled October 11, 1944.
(182 S. W., 2d Series, 695.)

T. A. *Hicks* and *Thelbert Martin*, both of Wichita Falls, for petitioner.

It was error for the Court of Civil Appeals to hold that the ordinance extending the city limits so as to take in the military reservations was void; it was also error to hold that the Railroad Commission of the State had jurisdiction to grant a permit and certificate of public convenience and necessity to operate a bus line in the city and to the military reservation in a suburb thereof, or that the ordinance of annexation could be attacked in this suit, as its validity could only be questioned by a direct proceeding in quo warranto brought by the State, or in which the State is a party. Tod v. City of Houston, 276 S. W. 419; City of Gladewater v. State ex rel Walker, 138 Texas 173, 157 S. W. (2d) 641; State v. City of Waxahachie, 81 Texas 626, 17 S. W. 348.

T. R. *Boone*, of Wichita Falls, and *Alfred Crager*, of Fort Worth, for respondent.

MR. JUSTICE CRITZ delivered the opinion of the Court.

During all the time here involved, the City of Wichita Falls, Texas, was a home rule city, duly incorporated and operating as such under the Constitution and Statutes of this State. Sheppard Field and Kell Field lay north of the City, and some three or four miles distant from its corporate limits. Sheppard Field was a United States military reservation, where soldiers were trained for service in our armed forces. Kell Field was the City's airport and was used as a combination airport and training school by the Civil Aeronautics Administration. As we understand this record, Kell Field and Sheppard Field adjoin each other, and Sheppard Field lies south of Kell Field. The above two fields were connected with the City by State Highway No. 70, a roadway some 100 to 120 feet wide.

On June 1, 1942, the City passed an ordinance which by its terms annexed the above two fields and the State highway connecting them to the City. Stated in another way, on the date above mentioned, the City passed an ordinance extending its corporate limits so as to include therein the two fields above mentioned, and the State highway connecting them, within the City. As we understand this record, no attack is made on the above

ordinance on the ground that the City did not observe all legal formalities in passing or enacting the same.

After passage of the annexation ordinance the City passed two additional ordinances. One of these ordinances has effect to levy a rental charge of two per cent. of the gross income received for transporting passengers for hire in motor buses over the City's streets within its corporate limits. The other ordinance fixes fares to be charged by those transporting passengers for hire in motor buses within the City. Both of these last-mentioned ordinances provide penalties and fines for their violation.

Prior to the passage of the above annexation ordinance, and prior to the passage of the two later ordinances, Bowen held certain certificates of convenience and necessity, which, for the purpose of this opinion, we will assume were duly and legally issued to him by the Railroad Commission of Texas. These certificates on their faces authorize Bowen to operate motor bus lines on and over the section of Highway No. 70 included in the above annexation ordinance, and, of course, operated to subject him to the regulations and rates for transportation as promulgated, fixed, and defined by the Railroad Commission. As we understand, such rates are different from those fixed by the City.

After the passage of the above three ordinances Bowen continued to operate his buses over the section of Highway No. 70 included in the annexation ordinance above mentioned, claiming the right to do so only under the certificates of convenience and necessity issued by the Railroad Commission. He denies that the inclusion of this territory into the City has in any way affected his rights in such territory under these certificates of convenience and necessity. We assume that the City is attempting to enforce its ordinances.

With the record in the above condition, Bowen filed this suit in the District Court of Wichita County, Texas, against the City and its mayor, praying for a judgment declaring the above ordinances void, and enjoining their enforcement as against him. Also Bowen prayed that the City be enjoined from exercising any control over him as a bus operator. The City and its mayor answered Bowens' petition. We will not attempt to detail the pleadings of either the City or Bowen. It is sufficient to say that we will treat them as raising the questions of law we will discuss and decide.

Trial in the district court, before the court without the aid of a jury, resulted in a judgment for Bowen enjoining the City from enforcing, or attempting to enforce, either its rental or rate ordinance as against Bowen. Also, such judgment enjoins the City from exercising, or attempting to exercise, any control over Bowen. As we interpret the judgment of the district court, it does not hold the annexation ordinance void, or even voidable, but merely holds that it cannot operate to affect, diminish, or terminate the rights which the law attaches to the certificates of convenience and necessity held by Bowen and issued by the Railroad Commission. On appeal by the City, the Court of Civil Appeals affirmed the judgment of the district court on a holding that the annexation ordinance was, and is, absolutely void. 175 S. W. (2d) 732. The case is before this Court on writ of error granted on application of the City.

As we understand this record, Bowen makes no contention that the annexation ordinance above mentioned is void for want of power or jurisdiction on the part of the City to annex adjacent territory in the manner and way provided thereby. Also, as we interpret it, the opinion of the Court of Civil Appeals does not hold this ordinance void on any such theory.

■ Section 5 of Article XI of our State Constitution, commonly known as the Home Rule Amendment, authorizes cities having more than 5,000 inhabitants, by a majority vote of their qualified electors, to adopt or amend their charters, and Section 2 of Article 1175, R. C. S. 1925, provides that home rule cities have the power to extend their boundaries and annex additional territory lying adjacent thereto, as may be provided by their charters. Under the statute just mentioned, home rule cities have power to annex adjacent territory in any way their charters may provide. Eastham v. Steinhagen, 111 Texas 597, 243 S. W. 457; City of Waco v. Higginson (Com. App.), 243 S. W. 1078. In this instance, the City followed the pertinent provisions of its charter in enacting this annexation ordinance.

■ The opinion of the Court of Civil Appeals holds this ordinance is void because the territory purported to be annexed is not adjacent to the corporate limits of the City within the meaning of Article 1175, supra. This holding is based upon the fact that the territory annexed is only joined to the City by a stem, consisting of a State highway 100 to 120 feet wide, at the line of the City's limits, and extending for some three or four miles at that width before the balance of the annexed territory spreads out and comprises some several hundred acres of land. If any

attack is here made on this annexation ordinance it is purely collateral, and any such attack cannot be made unless the or- dinance is void. Since the City enacted it under constitutional, statutory, and charter authority, it cannot be void. Unless it is void, it can be questioned only by a direct suit in the nature of a quo warranto proceeding, or in a proceeding to which the State is a party. 30 Tex. Jur., p. 37, sec. 35; Todd v. City of Houston (Com. App.), 276 S. W. 419, and authorities there cited; Lefler v. City of Dallas (Civ. App.), 177 S. W. (2d) 231. It is true, as shown by the opinion of the Court of Civil Appeals, that the land here annexed is only joined to the City by a narrow neck, but that fact, standing alone, could not render this ordinance void. Neither the statute, Article 1175, supra, nor the charter of the City defines or provides length, width, shape, or amount of area of land that the City may annex. It must follow, there- fore, that any attack on this annexation ordinance, on account of the shape of the area included therein, if it can be made at all, a matter we do not decide, must be made in a direct proceeding to which the State is a party.

We now come to decide what effect, if any, this annexation ordinance has had on these certificates of convenience and necessity.

■ When territory, not theretofore included in the corporate limits of a city or town, is annexed to such city or town the public highways and roads located in such annexed territory become streets of the annexing city or town. 43 C. J., p. 142, sec. 120; 37 Am. Jur., p. 651, sec. 24. It follows that when the territory here involved was annexed to the City, the State high- ways located in such annexed territory became streets of the City.

■ Article 1175, Vernon's Texas Civil Statutes, defines the con- trol and jurisdiction of Home Rule Cities over their streets, highways, alleys, and public grounds. Subdivision 12 of such Article authorizes such cities to prohibit the use of any street, alley, or highway therein without first obtaining its consent and paying such compensation as the City may prescribe. Such sub- division authorizes Home Rule Cities to fix and regulate the charges, fares, or rates of all concerns exercising public privi- leges on or over its streets, and to prescribe the kind of service to be furnished by them. Subdivision 21 of Article 1175, supra, authorizes Home Rule Cities to regulate, license, and fix the charges or fares charged by any person owning, operating, or controlling any vehicle of any character used for carrying pas-

sengers for hire or the transportation of freight for hire on the public streets and alleys of such city.

■ ´ By the express terms of Section 1, Subdivision (c) of Article 911a, Vernon's Texas Civil Statutes, the term "Motor Bus Company" does not include such concerns in so far as they operate wholly within the corporate limits of any incorporated city or town. Clearly this statute operates to deny the Railroad Commission the power to regulate local business done by Motor Bus Companies in such municipalities.

■ Concerns holding certificates of convenience and necessity issued or granted by the Railroad Commission hold same subject to all laws of this State which apply thereto, and this rule applies as to all laws thereafter enacted, as well as to laws in force at the time of issuance. Section 15, Article 911a, supra; Railroad Commission v. McDonald (Civ. App.), 90 S. W. (2d) 581. The statute just cited expressly provides that concerns holding certificates of convenience and necessity issued by the Railroad Commission hold same subject to the right of the State, at any time, to regulate, restrict, or forbid their use. Furthermore, it is settled by universal authority that no person can acquire a vested right to use public streets and highways for carrying on a commercial business. 21 Tex. Jur., p. 704, sec. 185; West v. City of Waco, 116 Texas 472, 294 S. W. 832; Railroad Commission v. McDonald (Civ. App.), 90 S. W. (2d) 581; Ex parte Sterling, 122 Texas 108, 53 S. W. (2d) 294.

■ From the rules of law which we have announced it is evident that these certificates of convenience and necessity were issued subject to the laws of this State governing cities and towns and their power to regulate and control their own streets. Also, such certificates were issued subject to the laws of this State governing the power of cities and towns to regulate and control the local businesses of bus companies or other concerns carrying passengers for hire on or over their streets. This being true, when the territory here involved became a part of the City these certificates of convenience and necessity ceased to confer any more rights on the holder thereof within the annexed territory here involved than they would have conferred had they been issued after such annexation.

The judgments of the Court of Civil Appeals and district court are both in all things reversed and set aside, and judgment is here entered as follows:

(a) Judgment is here rendered in all things dissolving the injunction granted by the district court in favor of Bowen and against the City.

(b) Judgment is here rendered that Bowen take nothing by this suit, and that he be denied all injunctive and equitable relief prayed for by him against the City.

(c) The City having filed a cross-action against Bowen asking for injunctive relief in its favor, it is ordered that this cause be remanded to the district court for further proceedings on such cross-action only.

(d) The costs of this appeal in the Court of Civil Appeals and in this Court are adjudged against Bowen.

Opinion delivered March 15, 1944.

### ON MOTION FOR REHEARING.

This case is now before us on motion for rehearing, filed by R. C. Bowen, Trustee, respondent. In such motion Bowen contends that we were in error in all the rulings contained in our original opinion. We have read and carefully considered such motion touching these matters, and still adhere to the views expressed in our original opinion.

■ If we properly interpret Bowen's motion for rehearing, he contends that since Sheppard Field is a United States military reservation, under the exclusive jurisdiction and control of the Federal Government, the City of Wichita Falls had no power to assume jurisdiction over it by annexing it thereto. We are not impressed with this contention. Certainly Sheppard Field is a part of the State of Texas, and this is so even though we concede that it is under the exclusive jurisdiction and control of the United States Government. By the same token, it can be part of an incorporated city within this State. Of course, the power of the city, like the power of the State, to exercise jurisdiction and control over its territory may be curtailed, and even suspended, during the time it is under the jurisdiction and control of the United States Government; but that fact would not justify a holding that it cannot become a part of the area of an incorporated city.

It appears that Bowen has a license, issued to him by the United States Government, to enter and transport passengers

within the limits of Sheppard Field. As already shown, Sheppard Field is a military reservation, under the jurisdiction and control of the United States Government. This license contains the following provision:

"That the rates and fares shall be as mutually agreed upon from time to time by the Commanding Officer and the licensee, providing that such rates and fares shall not exceed those prescribed by competent authority pursuant to law."

Bowen contends that the City's rate ordinance is void, because its enforcement would operate to impair or destroy his rights under his license to operate in Sheppard Field, issued to him by the Federal Government. We do not understand that the City is attempting to enforce its bus rates within Sheppard Field, in conflict with any license or permit issued by the Federal Government. The very permit here involved recognizes that rates and fares may be prescribed by competent authority pursuant to law. Prior to the passage of this annexation ordinance, Bowen claims that he operated under the jurisdiction of the Railroad Commission, and he urges that jurisdiction here. We see no reason why the jurisdiction of the City cannot be sustained where the jurisdiction of the Commission has ceased because of the annexation of this territory to the City.

■ Bowen contends that "the ordinances of * * * taxation involved in this case are void and wholly without authority of law," because it is an attempt to tax fares paid and collected on Sheppard Field "by those using the streets thereof and who board respondent's buses within that reservation." This case involves no tax ordinance. The ordinance under discussion is purely one fixing a rental charge of two per cent. of the gross income received by those operating buses for hire over the City's streets within its corporate limits.

The motion for rehearing filed herein by Bowen is in all things overruled.

Opinion delivered October 11, 1944.