

**THE ATTORNEY GENERAL**

**OF TEXAS**

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

January 12, 1948

Hon. Ernest O. Thompson, Chairman
Railroad Commission of Texas
Austin, Texas      Opinion No. V-473

> Re: Effect upon outstanding
> certificates issued un-
> der Article 911b, V.C.S.,
> authorizing motor car-
> rier operations in cer-
> tain areas, as a result
> of the consolidation of
> the Cities of Pelly and
> Goose Creek.

Dear Sir:

The facts which prompted your request for an opinion in connection with the above captioned matter are restated as follows:

On December 8, 1945, the area commonly known as Baytown was annexed to and became a part of the "home rule" City of Pelly (City of Pelly v. Water Control District, 198 S. W. (2d) 450, Sup. Ct. 1946). Thereafter, on the 27th of September, 1946, the Railroad Commission of Texas issued its order granting a specialized motor carrier certificate of convenience and necessity authorizing the transportation of certain commodities from La Porte, Texas, and points within a ten mile radius thereof, with the exception of the corporate limits of Goose Creek, to all points in Texas, and vice versa. At the time this order was entered Pelly and Goose Creek were separate incorporated cities, but were contiguous to each other. Subsequently, on the 15th day of February, 1947, elections were held in the Cities of Pelly and Goose Creek resulting in the consolidation of Goose Creek with Pelly, the latter being the larger city. The elections resulting in the consolidation were held under Article 1188, V.C.S., and records of the

same have been filed with the Secretary of
State under Article 1192, V.C.S.

Based upon these facts the following question
is presented:

As a result of the consolidation of Goose
Creek with Pelly into one city, is the operator of the
specialized motor carrier certificate in question now
authorized to serve the area formerly embraced within
the corporate limits of Goose Creek?

We assume for the purpose of this opinion
that the consolidation of Goose Creek with Pelly was
in accordance with the existing State laws on the sub-
ject.

Article 1188, V.C.S., specifically authorizes
cities, such as Goose Creek and Pelly, to consolidate
under one government and to take the name of the larger
city. The term "consolidate" is defined by Article
1191, V.C.S., as meaning ". . . the adoption by the
smaller cities of the charter and name of the larger
of said cities, and the amendment of the charter of
the larger cities so as to include in its boundaries
the territory of the smaller city or cities so con-
solidated . . ." (Emphasis ours) As a result of the
consolidation in question, the corporate existence of
Goose Creek as a municipality became extinct. 1 Mc-
Quillin Municipal Corporation, Second Edition, Revised,
877, § 315.

Section 2 of Article 911b, V.C.S., expressly
provides that ". . . nothing in this Act or any provi-
sion thereof shall be construed or held to in any man-
ner affect, limit or deprive cities and towns from ex-
ercising any of the powers granted them by Chapter 147,
Pages 307 to 318, inclusive of the General Laws of the
State of Texas, passed by the 33rd Legislature, or any
amendments thereto." A certificate issued by the Com-
mission under Article 911b, supra, is subject to all
the laws of this State governing cities and towns and
their legal right to consolidate and expand by annexa-
tion of additional territory. Compare City of Wichita
Falls v. Bowen, 143 Tex. 45, 182 S. W. (2d) 695 (1944).
The certificate being subject to the laws respecting
cities and towns, the restriction contained therein has
now ceased to exist, because the area formerly included
within the corporate limits of Goose Creek is now, as a

result of the consolidation, legally a part of the corporate limits of Pelly--a city authorized to be served under the certificate.

The restriction contained in the certificate excluding service within the corporate limits of Goose Creek does not, in our opinion, reflect an intention on the part of the Commission to prohibit service within this particular area in the event the Cities of Pelly and Goose Creek were consolidated. The grant of authority to a carrier by the Railroad Commission to serve a particular city (in this instance Pelly) contemplates the future growth and expansion of the city, not only through normal growth, but through annexation of additional territory and all other lawful means authorized by our State laws. See 1 Pond on Public Utilities 316, § 131.

Certainly it would not be presumed that the Commission intended in the event Goose Creek was consolidated with Pelly, as authorized by law, that the public transportation service authorized by the certificate would be available to the public in a portion of the consolidated city and not to the other portion. It would be extremely difficult, if not impossible, to police such an operation. To hold that the Commission intended such a result would be to hold that the Commission intended something here which we are informed has never been done in the entire history of the administration of the Texas Motor Carrier Law.

Based upon the above and foregoing, the question is accordingly answered in the affirmative.

The conclusion reached makes unnecessary a discussion of the second question presented by your request.

### SUMMARY

The restriction contained in a certificate issued by the Railroad Commission authorizing service to and from the City of Pelly, but prohibiting service to or from the corporate limits of the City of Goose Creek, is nullified by the subsequent consolidation of the City of Goose Creek with the City of Pelly. As a result of the consolidation the operator of the certificate is authorized to

serve the entire City of Pelly, including
that portion formerly embraced in the cor-
porate limits of Goose Creek.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Charles D. Mathews*
Charles D. Mathews
Assistant

CDM:jt

APPROVED:

*Joe R. Greenhill*

ACTING ATTORNEY GENERAL