134

### GARDNER v. AMERADA PETROLEUM CORPORATION et al.

#### C. A. No. 116.

United States District Court
S. D. Texas.   Victoria Division.
May 22, 1950.

Guittard & Henderson, Victoria, Tex., Barnes & Barnes,  W. H. Barnes, Terrell, Tex., for plaintiff.

Harry D. Page, Tulsa, Okl., John G. Stofer, Victoria, Tex., Kilgore & Kilgore, James A. Kilgore, Dallas, Tex., for defendant.

HANNAY, District Judge.

#### Statement of the Case

Plaintiff, H. E. Gardner, a resident of Navarro County, Texas, sued Amerada Petroleum Corporation, a Delaware corporation (hereinafter called Amerada), and the Celeste Scott heirs, residents of Texas, for title and possession of Lot 11, Block 37, of the Bloomington Townsite, in Victoria County, Texas, free and clear of an oil and gas lease claimed by Amerada; also, William F. Koch, a resident of Bexar County, Texas (hereinafter called Koch), on his warranty as grantor in a general warranty deed under which plaintiff claims. Since the filing of the deed dated January 9, 1949, hereinafter mentioned, the Scott heirs are no longer real parties to this action.

For answer, Amerada filed a Plea of Not Guilty and claims to be an innocent purchaser for value of the oil lease on the lot in question and alleges estoppel and laches, and in the alternative, invokes the "coverall" (sometimes called the "Mother Hubbard") clause in an oil and gas lease from Koch, dated January 19, 1945. Amerada specifically sets out the facts upon which it relies and prays for judgment decreeing that any title held by plaintiff be subject to the leasehold interest of Amerada under the lease of January 19, 1945.

A jury being waived, the case was tried before the Court, and was submitted by evidence admitted on the trial, including admissions and stipulations.

## Findings of Fact

I find the following to be the pertinent facts in this case:

1. This suit was filed on February 7, 1949.

2. In December, 1907, the Townsite of Bloomington was duly platted by Charles A. Burton. Such plat was adopted and duly recorded in Vol. 58, pages 221–222 of the Deed Records of Victoria County, Texas. (Hereafter, for brevity, all references to volumes and pages have reference to the Deed Records of Victoria County, Texas.)

3. Thereafter, by mesne conveyances from Charles A. Burton, the greater portion of the Townsite of Bloomington became vested in the Bloomington Townsite Company, a corporation. This corporation became bankrupt during the year 1916, and the Trustee in Bankruptcy conveyed the greater portion of the Townsite to Koch, by two deeds, one dated July 17, 1916, recorded in Vol. 83, page 197, and the other dated October 12, 1917, and recorded in Vol. 85, page 321. Koch acquired title to Lot 11, Block 37, under the latter deed.

4. By deed dated October 8, 1917, recorded in Vol. 95, page 299, Koch acquired title to Lots 1 and 2, Block 37, of the Bloomington Townsite from Miguel Rivera.

5. By deed dated December 22, 1922, recorded in Vol. 104, page 213, Koch conveyed Lots 11 and 12, Block 37, to Celeste Scott. Celeste Scott, immediately thereafter, moved upon the premises that had formerly been occupied by Miguel Rivera, to-wit: Lots 1 and 2, Block 37. Celeste Scott paid Koch $600.00 consideration, and Lots 11 and 12 were then unimproved and vacant and were not worth in excess of $25.00 per lot.

6. In the year 1932 Celeste Scott executed a materialman's lien for improvements on her homestead, which was described as Lots 11 and 12, in Block 37, although such improvements were actually made on Lots 1 and 2 in said block. Lot 12, Block 37, was never, at any time, owned by Koch.

7. Jake Scott, to whom Celeste Scott was married at the time of said purchase, died intestate in Victoria County, Texas, in 1927, and Celeste Scott died intestate in said county in the year 1933. All of their legal heirs were joined in this suit as it was originally filed.

8. During the years 1945, 1946 and 1947 Amerada purchased a block of leases in the Townsite of Bloomington. Amerada had procured the services of local real estate dealers in Victoria County, Texas, who in turn approached plaintiff and Koch to aid them in determining the then ownerships of lots in the Townsite and obtaining leases from such owners. During 1945, 1946 and 1947 Koch and Gardner executed a number of leases to Amerada upon lots that they represented they owned, and Gardner obtained leases from various parties for Amerada, for which services he was paid a commission. Among the lots leased to Amerada by Koch were Lots 1 and 2, Block 37, described in lease dated June 4, 1946, recorded in Vol. 214, page 262.

9. In 1947 Bloomington was a village of about 300 people. The oil well drilled by Amerada came in in 1947.

10. On May 17, 1947 Amerada purchased for a valuable consideration, an oil and gas lease from the heirs of Celeste Scott, in which the heirs of Celeste Scott warranted title to Lots 11 and 12, Block 37, of the Bloomington Townsite. These leases are recorded in Vol. 224, page 11, and Vol.

222, page 450. An additional lease from Gertrude Williams, a Scott heir, dated September 16, 1947, was secured by Amerada, same being recorded in Vol. 224, page 474.

11. On July 22, 1947, by warranty deed recorded in Vol. 226, page 56, Koch conveyed Lots 1 and 2, Block 37, to plaintiff, H. E. Gardner.

12. On or about July 28, 1947, representatives of Amerada, in checking the use and occupancy of the various lots in the Townsite of Bloomington, ascertained that some of the heirs of Celeste Scott were occupying the house situated on Lots 1 and 2, Block 37, and that such occupants were claiming to own those two lots. These were the lots upon which the house is situated. Thereupon Amerada took leases from the heirs of Celeste Scott on Lots 1 and 2, Block 37, such leases being recorded in Vol. 225, page 211, and Vol. 224, page 295.

13. On August 2, 1947, plaintiff obtained from Koch a general warranty deed to Lot 11, Block 37. Thereafter, on or about January 9, 1949, the heirs of Celeste Scott executed and delivered to plaintiff a quitclaim deed to Koch for said Lot 11, Block 37, which deed is recorded in Vol. 246, page 303.

14. On or about January 19, 1945 Koch, a single man, executed an oil and gas lease to Amerada, dated January 19, 1945, recorded in Vol. 204, page 18. Said lease covered the following described property in Victoria County, Texas: "112.6 acres described as follows: Being all of the lots, blocks, streets, avenues and roads or other real estate out of part of the original Bloomington Townsite in said county as shown by map or plat recorded in Vol. 58, pages 222 et seq. of the Deed Records of Victoria County, Texas."

Then follows a lengthy description of property. After the description of property is the following clause: "This lease also covers and includes all land owned or claimed by lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not included within the boundaries of the land particularly described above. For the purpose of calculating the rental payments hereinafter provided for, said land is estimated to comprise 112.6 acres, whether it actually comprises more or less."

This identical clause is in the lease from Koch to Amerada, dated June 4, 1946, and recorded in Vol. 214, page 262, and Lots 1 and 2, Block 37, are included in this lease.

15. Lot 11, Block 37, of the Townsite of Bloomington is property immediately across the street from the 112.6 acres above referred to, and the lease to such 112.6 acres is still in full force and effect in so far as it covers all the property therein described. Said street is about 60 feet in width.

16. Plaintiff and defendant Koch were long-time close friends and business associates. Henry Matchett, who secured the original lease for Amerada from the Scott heirs, is a discharged employee of Amerada.

17. Amerada did not know, nor did it have notice of the fact that the Scott heirs were claiming Lots 1 and 2, Block 37, rather than Lots 11 and 12 in said block, when Amerada took a lease from the Scott heirs on May 17, 1947, on Lots 11 and 12, in Block 37.

18. Until on or about July 28, 1947 Amerada did not know of the mistake Koch had made in deeding the lots to Celeste Scott, nor did any supervising employee of Amerada, or the witness Matchett, or Celeste Scott, or her husband, or any of the Scott heirs, or said Koch, know of such mistake, and the surrounding circumstances were not such as to have put Amerada upon inquiry which, if pursued, would have led to discovery of the fact that the Scott heirs were actually living on Lots 1 and 2, Block 37, of said Townsite.

19. When plaintiff acquired deed from Koch to Lot 11, Block 37, he well knew that Amerada had a lease from the Scott heirs. He also knew of the mistake in the description in deed from Koch to Celeste Scott.

20. The so-called coverall, or "Mother Hubbard" clause in the leases referred to in Finding No. 14, supra, was placed in such leases with the full knowledge and in-

tention of both the lessor Koch and the lessee Amerada.

## Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this action.

2. Amerada was an innocent purchaser for value, without notice, on May 17, 1947, when it purchased the leases from the Scott heirs.

3. Plaintiff was not an innocent purchaser for value, without notice, when he acquired deed from Koch, inasmuch as he well knew of the leases from the Scott heirs to Amerada.

4. The lease of January 19, 1945 from Koch to Amerada is a valid and subsisting lease, and under the coverall or "Mother Hubbard" clause in such lease said Lot 11, Block 37, was included therein.

In this connection, the law in Texas is well settled that in such cases as here presented, it is incumbent upon the plaintiff to establish by a preponderance of the evidence that both lessor and lessee did not intend the land not specifically described in the lease to be included therein. In the leading case on this point, Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, 450, decided by the Commission of Appeals, opinion by then Commissioner Smedley, now a Justice of the Supreme Court of Texas, the Court said: "If *one* of the parties intended that the lease cover and affect adjoining land owned by the lessor, there was no mutual mistake in the execution of the lease containing language which included such land. In the absence of fraud or inequitable conduct, a written instrument will not be reformed on account of mistake, unless the mistake is mutual; that is, a mistake common to both parties, both laboring under the same misconception in respect to the terms of the instrument. St. Paul Fire & Marine Ins. Co. v. Culwell, Tex.Com.App., 62 S.W.2d 100; 36 Tex.Juris. p. 746, § 17, p. 750, § 19; 23 R.C.L. p. 327, § 20; note, 26 A.L.R. p. 501, and following; Black on Recission and Cancellation (2d Ed.) Vol. 1, p. 15, § 11, p. 396, § 128."

In this case the Court further said: "In a case where the agreement of the parties has been reduced to writing and the effort on the part of one of them is to avoid on account of mistake the effect of a part of the written agreement, the mistake from or on account of which relief is sought is the incorporation in the agreement of terms or conditions not representing the true agreement of the parties. What the parties mutually *intended* and agreed is *not* the vital inquiry. The party seeking reformation must of course prove what the true agreement was, but his case is not made by proof that there was an agreement which is at variance with the writing. *He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake.* Waco Tap R. Co. v. Shirley, 45 Tex. 355; Moore v. Giesecke, 76 Tex. 543, 547, 13 S.W. 290; Kelley v. Ward, 94 Tex. 289, 60 S.W. 311; Clemmens v. Kennedy, Tex.Civ. App., 68 S.W.2d 321, application for writ of error refused; Lane v. Urbahn, Tex. Civ.App., 265 S.W. 1063; Dalton v. Dalton, Tex.Civ.App., 143 S.W. 241; Litteral v. Bevins, 186 Ky. 514, 217 S.W. 369." Emphasis added.

Judge Smedley wrote opinions in two similar cases on that same date, to-wit: June 5, 1935, and the opinions in all three cases were adopted by the Supreme Court of Texas. The rule laid down in these cases has been rigidly adhered to by the courts of Texas. The two other cases were: Sun Oil Co. v. Burns et al., 125 Tex. 549, 84 S.W.2d 442, and Gulf Production Co. et al. v. Spear, 125 Tex. 530, 84 S.W.2d 452, 455. In the two Sun Oil Company cases it will be noted that the language embraced "adjoining" land while in the Gulf Production Company case the land included was "all land owned by the lessor in the Hollingsworth survey."

5. Lot 11, Block 37, was adjacent or contiguous to the lands leased by Koch to Amerada in the lease of January 19, 1945.

"That which is adjacent may be separated by some intervening object; that which is adjoining must touch in some part." Broun v. Texas & N. O. R. Co., Tex.Civ.App., 295 S.W. 670, 674; Vol. 2, Words and Phrases, Perm.Ed., page 383.

" 'Adjacent' (as used in a grant) does not mean adjoining, but signifies convenient, near to, or in the neighborhood." Brotherhood Inv. Co. v. Coal River Mining Co., 4 Cir., 46 F.2d 976, 979.

In Lefler v. City of Dallas, Tex.Civ.App., 177 S.W.2d 231, 232, 235, it was held that "An unincorporated subdivision was 'adjoining' or 'adjacent' to the City of Dallas, * * * though a long strip of land 10 feet wide connected the property with city limits."

"Contiguous" has also been held to mean "adjacent." See Vol. 9, Words and Phrases, Perm.Ed., page 96.

In International & G. N. R. Co. v. Boles, Tex.Civ.App., 161 S.W. 914, it was held that "land which was separated from a railroad right of way only by a parallel public road, which was condemned, from the landowner was 'contiguous' to the right of way within Rev.St.1911, art. 6602 [Vernon's Ann.Civ.St. art. 6401], permitting one owning land contiguous to the right of way of a railroad company which has permitted Johnson grass to mature on its land to recover a certain sum and actual damages; the fee of the public road still remaining in the landowner." In Application of Smith, 36 C.C.P.A., Patents, 1031, 173 F.2d 984, 986, "contiguous" is defined to mean "near; though not in contact", as well as "things that are in actual contact."

■ Further in this connection, the rule in Texas is well established that the property described in lease from Koch to Amerada, covering the 112.6 acres, by law extends to the center of the street. In Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361, 366, the Court said: "The rule has been definitely announced in the Warwick (Texas Bitulithic Co. v. Warwick, Tex.Com. App., 293 S.W. 160) and Weed (Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391) cases that where a deed conveys by specific field notes land abutting on a street or public highway or railroad right of way, it conveys title to the property to the center of the street, public highway, or railroad right of way; and such rule is not overcome even though the field notes describing the land stop at the side line of the street, public highway, or railroad right of way, unless a contrary intention is expressed in plain and unequivocal terms."

To the same effect is Miller v. Railroad Commission of Texas, Tex.Civ.App., 185 S.W.2d 223 and Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912.

In the late case of State ex inf. Taylor ex rel. Kansas City v. North Kansas City, Mo.Sup., 228 S.W.2d 762, at page 773, it is held: "Several tracts may be annexed as being *contiguous* if one tract is contiguous to the annexing municipality and the other tracts are contiguous to that tract and each other." Citing City of Wichita Falls v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434; Lefler v. City of Dallas, Tex.Civ.App., 177 S.W.2d 231. Emphasis added.

From the above it is clear that Lot 11, Block 37, is both adjacent and contiguous to the lands leased by Koch to Amerada on January 19, 1945.

■ 6. Plaintiff failed to discharge his burden to show that Amerada was not an innocent purchaser for value. Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Jones v. Sun Oil Co., Tex.Civ.App., 110 S.W.2d 80, writ of error refused.

■ 7. Amerada is not estopped to assert the rights obtained by virtue of the lease from the Scott heirs on May 17, 1947. Shell Oil Co. v. Howth, 138 Tex. 357, 159 S.W.2d 483; Meaders v. Moore, 134 Tex. 127, 132 S.W.2d 256, 125 A.L.R. 817.

## Judgment of the Court

In accordance with the above and foregoing Findings and Conclusions, the Judgment of the Court is:

1. That plaintiff take nothing by his suit against Amerada on Lot 11, Block 37, of the Townsite of Bloomington, Victoria County, Texas.

2. That the title of plaintiff to said Lot 11, Block 37, is subject to the lease held by Amerada covering said property.

3. That defendant Amerada recover its costs herein.

The Clerk will notify counsel of this decision and counsel for Amerada will prepare and submit a proper decree within ten days from such notice.