3-90-178-CV LOPEZ V. PUC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-178-CV





FIDENCIO LOPEZ, JESUS MARINES, GENARO MUNGIA, SIMON SERRATA,


RUBEN SANCHEZ, MRS. ERNESTO MONTEZ, DAVID T. PEREZ,


HELIO L. PEREZ, MARIA E. VILLELA, EDWARD GARZA, CAROLINA FLORES,


JESSE MARTINEZ, NARDO TORRES, GREGORIO SANCHEZ, ROQUE ALVAREZ,


JESSE FLORES, COSME LONGORIA, AND A. H. ALVARADO



 APPELLANTS


vs.





PUBLIC UTILITY COMMISSION OF TEXAS AND CITY OF ROBSTOWN,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 479,927, HONORABLE PAUL R. DAVIS, JR., JUDGE 



 




 The district court dismissed, for want of subject-matter
jurisdiction, certain claims brought by the plaintiffs against the
Public Utility Commission and the City of Robstown. The plaintiffs
appeal. We will modify the judgment and affirm it as modified.


THE CONTROVERSY



 In 1989, the governing body of the City enacted an
ordinance affecting the electric rates chargeable by the City's
municipally owned utility. The plaintiffs challenge the resulting
rates in the present lawsuit, which they filed after first
initiating in the Commission a similar attack upon the rates.



Plaintiffs' Appeal to the Commission


 In the Public Utility Regulatory Act (PURA), Tex. Rev.
Civ. Stat. Ann. art. 1446c § 26(c) (Supp. 1991), the Legislature
provided that the customers of a municipally owned electric
utility, who live outside the municipal limits, may appeal to the
Commission from an act of the City's governing body affecting the
rates of the utility. The Commission may then determine, in a
proceeding de novo, the rates the City "should have fixed in the
ordinance from which the appeal was taken," and then set such rates
by the Commission's own order. PURA § 26(g).

 A party in such a case initiates an appeal by filing in
the Commission a "petition for review signed by the lesser of
10,000 or 5 percent of the ratepayers served by such utility
outside the municipal limits." PURA § 26(c). The statute provides
further that: (1) each person receiving a separate bill from the
utility shall be considered a "ratepayer," but "no person shall be
considered as being more than one ratepayer" even though he
receives more than one bill; and (2) the "petition for review shall
be considered properly signed if signed by any person, or spouse of
any such person, in whose name residential utility service is
carried." Id.

 Following enactment of the City ordinance, the plaintiffs
filed in the Commission a petition for review under the terms of
PURA § 26(c), alleging they were ratepayers served by the City's
electric utility outside the municipal limits.



The Commission Rules


 The Commission has adopted procedural rules augmenting
the provisions of PURA § 26(c). The Commission's Rule 21.61
classifies the pleadings possible to be filed in an agency
proceeding, according to whether the cause comes within its
"original" or "appellate" jurisdiction. The latter refers to the
Commission's power to review a city's rate ordinances. 16 Tex.
Admin. Code § 21.61 (1988). (1)

 Rule 21.62 specifies the requisite form and content of
such pleadings. For example, Rule 21.62(g) prescribes the form and
content of petitions filed by ratepayers receiving service outside
the city limits. If they wish to appeal to the Commission under
PURA § 26(c), their petition must: (1) state clearly and concisely
the rate action, by the city's governing body, from which the
appeal is taken; (2) designate an individual, group, or
organization to serve as the petitioners' designated "attorney in
fact" in the course of the appeal and contested case, and in any
proceeding in a court of law; (3) list each signatory's name,
telephone number, and address (other than a post-office box), and
where electric service is received if different from such address;
and, (4) state that the appeal is taken under PURA § 26(c) rather
than under § 26(b), the latter being applicable to appeals taken to
the Commission by citizens within a municipality. Rule
21.62(g)(1)-(3).

 Rule 21.62(g)(5) declares that a page of the petition is
invalid if it omits any of the required information or the
information is not reasonably subject to verification; "however, if
the omitted or illegible material consists only of the name,
telephone number, or address of a signatory, only such signatures
are to be deemed invalid" and any "remaining signatures on that
page shall be accepted." Rule 21.62(g)(5) concludes with the
statement that "[a]ny disputes over the informational sufficiency
or legibility of a petition shall be resolved by" interim order of
the presiding hearings examiner.

 Rule 21.65 of the procedural rules provides that
pleadings shall be accepted "conditionally" for filing, even though
they may be insufficient under the rules. Subsequent provisions in
Rule 21.65 delineate a procedure for the cure of any material
pleading deficiencies and a corresponding extension of filing
deadlines.

 Rule 21.65(c) establishes a procedure for the
verification of petitions in appeals taken to the Commission, under
PURA §§ 26(b) or (c), from the rate actions of the governing bodies
of municipalities. The procedure consists of allowing the
municipality a period of time within which to verify the status of
the signatories and to object to the authenticity of any
signatures, any objection being resolved by the presiding hearings
examiner after notice and hearing as authorized in § 21.62(g)(5).



The Commission's Dismissal of Plaintiffs' Petition


 In the present case, the City initially filed a motion
requesting that the Commission dismiss the plaintiffs' petition on
the ground that it was not timely filed in the agency. (2)
 After the
Commission overruled the motion, the City commenced the
verification process authorized in Rule 21.65(c). In the process,
the City allegedly persuaded several individuals to notify the
Commission that they withdrew their signatures because they did not
wish to pursue the appeal. The City thereafter objected to the
plaintiffs' petition on two grounds contemplated in Rule 21.62(g): 
(1) the petition did not state clearly and concisely the rate
action challenged by the plaintiffs; and (2) the petition was not
signed by 28 individuals, the minimum number required to bring an
appeal under PURA § 26(c).

 The Commission's examiner issued an order requesting
additional factual information relating to the City's verification
of signatures, and gave the plaintiffs and the Commission an
opportunity to respond. Neither did so. The examiner then
convened a hearing to obtain such factual information and to
receive evidence regarding the merits of the appeal. In connection
with this hearing, the plaintiffs neither adduced evidence nor
offered a brief in support of their position in the case, either as
to the merits or as to any irregularities in the verification
process.

 In a post-hearing report to the Commission, the examiner
recommended that the petition be dismissed (1) for lack of
jurisdiction in the Commission, there being only 12 valid
signatures instead of the minimum number of 28 required by PURA
§ 26(c); and (2) for lack of a petition that stated clearly and
concisely the action, taken by the governing body of the City, from
which the appeal was prosecuted. The examiner recommended
alternatively that if the Commission determined it had jurisdiction
over the controversy, then it should prohibit the utility's
recovering through its rates certain expenditures contemplated by
the City ordinance, these being impermissible items of recovery
under the ratemaking provisions of PURA. The report recommended
certain findings of fact and conclusions of law in support of each
alternative recommended by the examiner.

 On January 24, 1990, the Commission issued its order
dismissing the petition for want of jurisdiction and adopting the
examiner's report in that respect. One Commissioner dissented on
several grounds pertaining to the signature requirements of Rule
21.62(g).



THE DISTRICT-COURT SUIT


 On February 23, 1990, the plaintiffs filed the present
cause in a district court of Travis County. Their original
petition set up a statutory cause of action for judicial review of
the Commission's order of dismissal, as authorized in PURA § 69 and
as governed by the Texas Administrative Procedure and Texas
Register Act (APTRA), Tex. Rev. Civ. Stat. Ann. art. 6252-13a § 19
(Supp. 1991). In their first amended original petition, however,
the plaintiffs abandoned that statutory cause of action and alleged
other causes of action ostensibly within the original jurisdiction
of the district court, determinable by a preponderance of the
evidence as opposed to the substantial-evidence review contemplated
in PURA § 69 and APTRA § 19.

 Against the Commission, the plaintiffs prayed for
declaratory relief, under APTRA § 12 and the Uniform Declaratory
Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011
(1986 and Supp. 1991), that the Commission's dismissal of the
plaintiff's petition was illegal and unconstitutional. The
plaintiffs prayed also for temporary and permanent injunctions
restraining the Commission from enforcing any of the rules,
regulations, and policies that led to the dismissal of their
petition. They may have prayed as well for money damages,
attorney's fees, and costs, but this is not clear. These prayers
for relief were based, apparently, on the following allegations set
out in the body of the petition:


 1. The Commission acted without authority in dismissing
the petition because the requirements of Rule 21.62(g)
exceeded the requirements of PURA § 26(c).


 2. The dismissal deprived the plaintiffs of rights,
privileges, and immunities secured by the First and
14th Amendments to the Constitution of the United
States, under color of law, as contemplated in 42
U.S.C.A §§ 1983, 1985, 1988 (West 1981).


 3. The Commission violated the terms of PURA § 26(c) "by
approving, allowing and encouraging" the City's
"scheme" to defeat the Commission's jurisdiction to
review the rate ordinance.


 4. The provisions of Rule 21.62(g) violated the explicit
provisions of PURA § 26(c) and the due-process and
equal-protection guarantees of the 14th Amendment.



 Against the City, the plaintiffs prayed for a temporary
injunction prohibiting the enforcement of the City ordinance, for
$6,500,000 in damages, and for costs of suit, reasonable attorney's
fees, and general relief. While the petition is not clear on the
point, the plaintiffs may have meant these to be claims against the
Commission as well as the City. We will assume that to be the
case. In all events, the prayer for temporary injunction, damages,
costs, attorney's fees, and general relief rests evidently on the
following allegations in the body of the plaintiffs' petition:


 1. The City's "scheme" to defeat the Commission's
jurisdiction was illegal and violated the First and
Fourteenth Amendments of the United States
Constitution and unspecified provisions of PURA,
under color of law, as contemplated in 42 U.S.C.A.
§§ 1983, 1985, 1988 (West 1981).


 2. The City willfully breached a covenant of good faith
and fair dealing, causing the harm sustained by the
plaintiffs.


 3. The City intentionally misrepresented and concealed
from the plaintiffs material facts pertaining to
utility rates, upon which the plaintiffs relied to
their harm.


 4. The plaintiffs were entitled to a repeal of the
ordinance, to an accounting, and to have placed in
the registry of the court any sums derived under the
ordinance. (These were not included in the
plaintiffs' prayer for relief and we assume their
inclusion in the body of the petition was intended
merely to augment the allegations in 1, 2, and 3.).



 The City and the Commission interposed pleas to the
jurisdiction. The City alleged that the plaintiffs' causes of
action were prohibited under the "collateral attack" doctrine and
thus lay outside the district-court jurisdiction, which might be
exercised only in a direct attack brought under PURA § 69. The
Commission alleged the same "collateral attack" theory and, in
addition, prayed for dismissal of the plaintiffs' causes of action
on the basis of the doctrine of "sovereign immunity."

 After hearing, the trial court ordered dismissal of the
plaintiffs' causes of action on two grounds: (1) that a motion for
rehearing under APTRA § 16(e), which the plaintiffs did not file in
the Commission, "is a jurisdictional prerequisite to any judicial
review of a Commission proceeding"; and (2) "that all other claims
in the Plaintiffs' First Amended Original Petition constitute
impermissible collateral attacks on the Commission order." We must
uphold the judgment on any legal theory that was before the
district court, even if it gave an incorrect reason for its
judgment dismissing the plaintiffs' causes of action. Guar. County
Mut. Ins. Co. v. Reyna, 709 S.W.2d 647, 648 (Tex. 1986).



DISCUSSION AND HOLDINGS


 The plaintiffs appeal to this court on a single point of
error: the district court erred in dismissing the cause "based on
[an] erroneous theory of law that the [Commission] had exclusive
jurisdiction of the claims." The plaintiffs' argument under the
point is difficult to follow. In the interests of justice,
however, we shall do our best to determine whether the district
court had jurisdiction of any of the causes of action alleged by
the plaintiffs in their First Amended Original Petition. We glean
from the plaintiffs' argument these points:  (1) the plaintiffs'
claims for declaratory and injunctive relief were not forbidden by
the collateral-attack doctrine; and (2) their claims for money
damages were not within the Commission's jurisdiction, and could
not, in consequence, amount to a collateral attack upon the
Commission's final order.


 The ordinance and the Commission's order carry a
presumption of validity. Corzelius v. Harrell, 186 S.W.2d 961, 967
(Tex. 1945); Kousal v. Texas Power & Light Co., 179 S.W.2d 283, 286
(Tex. 1944). This means that the law presumes that each was
promulgated in compliance with all statutory requirements and other
legal duties, that facts existed to justify the ordinance and the
order, and that each was enacted on sufficient evidence. 73A
C.J.S. Public Administrative Law and Procedure § 153, at 135
(1983).



Plaintiffs' Claims Against the Commission


 Concerning the plaintiffs' claims against the Commission,
we believe the district court lacked jurisdiction under the
doctrine of governmental immunity. Director, Etc. v. Printing
Industries Ass'n, 600 S.W.2d 264, 265 (Tex. 1980). The plaintiffs
do not contend their suit was founded upon a legislative consent to
suit, and we think it obvious that the various causes of action
were aimed at controlling State action or at subjecting the State
to liability. This is plainly the case as to the plaintiffs'
claims for money damages, but it is also true concerning their
claims for injunctive and declaratory relief under the Uniform
Declaratory Judgments Act. See W. D. Haden Company v. Dodgen, 308
S.W.2d 838, 841-42 (Tex. 1958).

 The Commission's plea of governmental immunity also
reaches the plaintiffs' causes of action under 42 U.S.C.A. §§ 1983,
1985, and 1988 because the Commission is an arm of the State and
thus not a "person" within the meaning of § 1983, which statute
does not override the traditional sovereign immunity of the States. 
Howlett v. Rose, ___ U.S. ___, 110 L.Ed. 2d 332, 353 (1990). 
Indeed, a State may not by common-law decision or by statute
consent to liability under § 1983, for doing so would alter the
elements of the § 1983 cause of action in violation of the
Supremacy Clause. Howlett, ___ U.S. at ___, 110 L.Ed. 2d at 353.

 The State has, of course, consented to suit in PURA § 69
and APTRA § 12, authorizing, respectively, suits for judicial
review of the Commission's final orders and suits to determine the
validity or applicability of agency rules. An essential element of
the former cause of action is a motion for rehearing filed in the
Commission under APTRA § 16(e). It is undisputed that the
plaintiffs omitted to comply with this prerequisite to judicial
review under PURA § 69, a "jurisdictional" prerequisite in the
sense of being a requirement for the exhaustion of administrative
remedies. Lindsay v. Sterling, 690 S.W.2d 560, 563 (Tex. 1985).

 Was the district court bound by APTRA § 12 to exercise
jurisdiction by rendering a declaratory judgment as to the validity
or applicability of Rule 21.62(g)? The provisions of APTRA § 12
are taken basically from the Revised Model State Administrative
Procedure Act § 7, 14 U.L.A. 400 (1961). It is said that the
model-act provisions in § 7 were designed to remove certain grounds
upon which courts sometimes denied relief under general
declaratory-judgment statutes: exhaustion of administrative
remedies, exclusivity of another remedy, and the absence of a
"justiciable controversy." 1 Cooper, State Administrative Law
246-47 (1965). One observes that a denial of declaratory relief on
the ground of primary jurisdiction is not one of the listed
grounds; and we have held, accordingly, that the precepts of the
primary-jurisdiction doctrine may permit a district court, in its
discretion, to deny declaratory relief under APTRA § 12. 
Southwestern Bell Tel. v. P.U.C. of Tex., 735 S.W.2d 663, 669-70
(Tex. App. 1987, no writ). For reasons that appear below, it is
not necessary to discuss here the relevant distinctions. It is
sufficient simply to say that one should not confuse the doctrines
of primary jurisdiction and exhaustion of administrative remedies. 
See e.g., Shannon, Declaratory Judgments Under the Texas
Administrative Procedure and Texas Register Act: An Underutilized
Weapon, 41 Baylor L. Rev. 601, 618-19 (1989).

 The scope of APTRA § 12 is limited in all events by the
separation-of-powers doctrine, a part of the checks-and-balances
system of the State constitution. Under that doctrine, the
Legislature may not confer upon the district courts a power that
lies outside the "judicial power," such as a power belonging to the
legislative or executive (administrative) departments. Gerst v.
Nixon, 411 S.W.2d 350, 353-54 (Tex. 1966); Davis v. City of
Lubbock, 326 S.W.2d 699, 713-15 (Tex. 1959). Thus, the remedy
afforded by the Uniform Declaratory Judgments Act cannot require
the district courts to render advisory opinions. United Services
Life Insurance Company v. Delaney, 396 S.W.2d 855, 858-64 (Tex.
1965). The same constitutional doctrine also curtails the
permissible scope of APTRA § 12. One form of advisory opinion is
that which decides a controversy that has become moot -- a case
involving a right that cannot be effectuated by the court's
judgment. See Stewart v. Bank of Woodson, 641 S.W.2d 230, 231
(Tex. 1982); see also, Calvert, Declaratory Judgments in Texas --
Mandatory or Discretionary?, 14 St. Mary's L. J. 1, 13-14, 16
(1982) (analyzing the Uniform Declaratory Judgments Act). The
plaintiffs' claim under APTRA § 12 is moot because Rule 21.62(g)
purports to be effective only within the context of an appeal to
the Commission under PURA § 26(c), and the controversy within that
appeal is now at an end because the plaintiffs did not file the
motion for rehearing necessary to sue for judicial review of the
Commission's final order, and therefore did not take the only step
that could have vacated the final order. APTRA § 19(b)(3). Even
if the district court should declare the validity or applicability
of Rule 21.62(g), as the plaintiffs request, that court would be
powerless to revive in some manner the plaintiffs' appeal under
PURA § 26, the only context in which the court's declaratory
judgment could have legal effect. We hold accordingly.

 While the plaintiffs have alleged violations of their
constitutional rights, and consent to suit is not necessary in such
cases when vested property rights are affected adversely,
Brazosport Sav. & L. Ass'n v. American Sav. & L. Ass'n, 342 S.W.2d
747, 750 (Tex. 1961), there is no allegation in the plaintiffs'
pleading from which such a vested right might be inferred. Under
PURA, no one has a vested right in any particular utility rate, but
only a statutory right shared with others to have rates that are
"just, fair and reasonable," as fixed by the appropriate regulatory
body subject to judicial review for errors of law under PURA § 69. 
PURA § 18; Southwestern Bell, Etc. v. Public Util., Etc., 615
S.W.2d 947, 957 (Tex. Civ. App. 1981, writ ref'd n.r.e., 622 S.W.2d
82 (Tex. 1981)); see J. Shaw, anno. Civil Rights: Racial or
Religious Discrimination in Furnishing of Public Utilities Services
or Facilities, 53 A.L.R.3d 1027 (1973). The remedies allowed under
42 U.S.C.A. §§ 1983, 1985, and 1988 "may not be used as a vehicle
to threaten every exercise of discretion in matters legitimately
within an area of a state's competence." 14 C.J.S. Supp., Civil
Rights, § 87, at 147 (1974).

 Because we believe the plaintiffs' causes of action were
properly dismissed for want of jurisdiction, we need not discuss
the doctrine of "collateral estoppel" as it might apply to the
plaintiffs' causes of action against the Commission. Much of what
we say below, however, would apply with equal force to those
actions.



Plaintiffs' Claims Against the City


 Concerning the plaintiffs' claims against the City, we
believe the district court properly dismissed these under the
doctrine forbidding collateral attacks against city ordinances. 
The doctrine holds that the validity of a city ordinance may not
ordinarily be challenged save in a direct proceeding, an exception
being recognized for instances in which the ordinance is void on
its face or the city had no power to enact it. City of Wichita
Falls v. Bowen, 182 S.W.2d 695, 698 (Tex. 1944); 6 McQuillin,
Municipal Corporations § 20.14, 45-46 (3rd ed., 1988 rev. ed.); 62
C.J.S. Municipal Corporations § 206, at 387-88 (1949).

 In the present case, the plaintiffs have not alleged the
ordinance is void; they complain only that it is erroneous because
it permits the utility to recover through its rates certain
expenditures that PURA prohibits. To remedy the errors, the
plaintiffs have alleged common-law actions for fraud and for an
accounting, as well as an action for vindication of their civil
rights under 42 U.S.C.A. §§ 1983, 1985, and 1988. We see nothing
in these allegations that takes the case out of the collateral-attack doctrine.

 Concerning the plaintiffs' allegations of fraud and a
right to an accounting, we believe these fall plainly within the
collateral-attack doctrine because they seek recovery on a premise
that the rates are merely erroneous under the ratemaking provisions
of PURA. This premise may be established only in a direct
proceeding under PURA § 26(c), and reviewed for errors of law under
PURA § 69. This is the sole remedy prescribed by the very
statutory scheme upon which the plaintiffs rely as a basis for
their contention that the rates are erroneous.

 Concerning the plaintiffs' claim in vindication of their
civil rights, there is no allegation that the relevant statutory
provisions have been applied to them differently than they would be
applied to anyone else; that is to say, there is no claim of
discrimination. They allege only that the city ordinance is
legally erroneous under the ratemaking provision of PURA. This
cannot serve as a basis for a civil-rights action for the reasons
given above.

 We believe, for the foregoing reasons, that the trial
court properly dismissed all the causes of action pleaded by the
plaintiffs.

 We modify the district-court judgment, however, to delete
that portion which decrees that "[t]he Plaintiffs take nothing on
their First Amended Original Petition." Having adjudged that it
had no jurisdiction over the plaintiffs' claims, the district court
could not contemporaneously order that they take nothing thereby.


 We affirm the judgment as modified.


 
 John Powers, Justice

[Before Justices Powers, Aboussie and Kidd]

Modified and Affirmed as Modified

Filed: August 28, 1991

[Publish]
1. We shall refer hereafter to the Commission's rules without
further citation to the Texas Administrative Code. The rule
numbers correspond to the section numbers in the Code.
2. We take our description of the agency proceeding from the
hearing examiner's proposal for decision and the Commission's final
order. They were not introduced in evidence at the district-court
hearing on the pleas to the jurisdiction filed by the City and the
Commission. Instead, they were apparently attached to the
plaintiffs' original petition in that court, which took "judicial
notice" of them with the plaintiffs' agreement. The two documents
do not appear, however, as attachments to the copy of the original
petition contained in our transcript. Copies of these are
contained in an appendix to the Commission's brief. The Commission
included copies of them in an appendix to its brief.


There appears to be no dispute about the accuracy of the documents
contained in the appendix to the Commission's brief. Indeed, the
plaintiffs refer to the documents at great length, generally by
ample quotations. In these circumstances, we believe we may
utilize the documents for purposes of discussion, especially since
the plaintiffs impliedly request that we do so and it appears
advantageous to them that we do.