## MILLS COUNTY v. LAMPASAS COUNTY.

### Decided April 15, 1897.

County Indebtedness—County Created from Another—Suit—Presentation of Claim.

In a suit by one county against another, created in part from its territory, to recover the proportionate amount of the debt of the former county existing before the creation of the latter, construing Constitution of Texas, art. 5, sec. 18, and Rev. Stats., arts. 764, 765, 765a and art 790, held:

1. Art. 790, Rev. Stats., refers only to ordinary claims against a county, and does not include one of this character. (P. 606.)

2. County Commissioners Courts are not given general authority over the county business; but merely such special powers as are specifically conferred by the Constitution and laws of the State. (Bland v. Orr, ante, P. 492.) (P. 606.)

3. Such claim was not strictly county business, not being a claim against the county, but against so much of it, only, as was cut off from the original county. (Pp. 606, 607.)

QUESTIONS CERTIFIED by Court of Civil Appeals, Third District, in an appeal from Lampasas County.

*J. L. Lewis, G. N. Harrison* and *E. B. Anderson,* for appellant.—Claims such as herein sued on are definitely embraced in that clause of the Constitution giving jurisdiction to Commissioners Courts over all county business; and are therefore, in contemplation of law, claims against counties, notwithstanding the revenues for the payment thereof, by virtue of other laws, must come from a definite part of such counties, only. Art. 5, sec. 18, Constitution of Texas; Presidio County v. Jeff Davis County, 35 S. W. Rep., 177.

The claim herein sued on was a lawful demand against Mills County prior to the act of 1893, and by virtue of the Constitution and laws of this State, existing when such act was passed, the Commissioners Court had the authority to audit and provide for the payment of such claims, and the act of 1893 does not confer the authority to levy a tax, but merely makes it the duty of Commissioners Courts, in the event of suit and final judgment, to levy a tax, the authority for which already existed, if it exists at all.   12 Am. & Eng. Encycl. Law, 555, notes 2 & 3; Comrs. of Carroll v. Richardson, 54 Ind., 153; Carroll v. Board of Police, 28 Miss., 38; Taylor v. Salt Lake Co., 2 Utah, 405; County v. Dunklin, 52 Ala., 28; Elmore County v. Zeigler, 52 Ala., 277; Branden v. Justice, 5 Call. (Va.), 548; Art. 677, Rev. Stats. of Texas; Callaghan v. Salliway, 23 S. W. Rep., 837; Norwood v. Gonzales County, 79 Texas, 218; Looscan v. Harris Co., 58 Texas, 511; Sutherland, Stat. Constr., sec. 288; Van Riper v. Essex, 38 N. J. Law, 23.

*Matthews & Browning,* for appellee.—The claim sued on in this case was not a claim against Mills County, but was a claim to have certain territory thereof subjected to the payment of certain indebtedness; it was not such a claim as Mills County had a right to audit, allow or pay out of its funds, either general or special, and its presentation to the Commissioners Court was therefore not required or necessary.

The act of April 26, 1893, would not have authorized Mills County to pay the claim sued on out of any of its general or special funds, and by the terms of the act a judgment of the District Court was a condition precedent to the levy of a tax to pay same, and having no authority to pay the claim or to levy a tax on the territory liable therefor until after a suit had been prosecuted to judgment, it was not necessary to present the claim to the Commissioners Court.

The Constitution confers upon plaintiff a right; the statutes enacted to carry into effect the Constitutional provision gave to plaintiff a cause of action as a means of acquiring the right, fixed the tribunal in which the action should be tried, fixed the rules of evidence and made all the provisions necessary to enable plaintiff to prosecute its action in the District Court. The general legislation upon the subject of claims against counties must give way to this later and specially directed legislation in regard to this particular class of claims, and it was therefore not necessary that the claim be presented to the Commissioners Court. Constitution of Texas, art. 9, sec. 1, Second Subdivision; Act of April 26, 1893, 23 Leg., p. 124; Mills County v. Brown County, 29 S. W. Rep., 650; Forest County v. Langlade County, (Wis.) 45 N. W. Rep., 598; Perry County v. Conway County (Ark.), 12 S. W. Rep., 877; Barnet v. Muncie National Bank, 98 U. S., 555; Lincoln County v. Oneida County (Wis.), 50 N. W. Rep., 344; Vincent v. Lincoln County, 62 Fed. Rep., 705; Hollingsworth v. Saunders, 54 N. W. Rep., 79; Board v. Nichols, 38 N. E. Rep., 526; Mackie v. City of West Bay, (Mich.) 64 N. W. Rep., 25; Sommers v. City of Marshfield, (Wis.) 62 N. W. Rep., 937; Barrett v. Village of Hammond, (Wis.), 58 N. W. Rep., 1053; Richards v. Comrs. of Clay Co., 40 Neb., 45; Townsend v. Little, 109 U. S., 504; State v. Morristown, 33 N. J. Law, 61; State v. Clarke, 25 N. J. Law, 55; Felt v. Felt, 19 Wis., 211; State v. Bittinger, 55 Mo., 596; Lindell's Admr. v. Railway, 36 Mo., 544; Crane v. Reeder, 22 Mich., 334; Dewey v. Central Car & Manfg. Co., 42 Mich., 402; Fox's Admr. v. The Commonwealth, 16 Grat., 1.

GAINES, Chief Justice.—This is a certified question from the Court of Civil Appeals for the Third Supreme Judicial District. The certificate shows that Mills County was a new county created and organized in 1887 and that its territory was taken from Lampasas, Brown, Hamilton and Comanche Counties; that the suit was brought by Lampasas County to recover from Mills County its proportionate part of the debt of the plaintiff county, which existed when the defendant county was created; and that the claim was not first presented to the Commissioners Court of the latter county for allowance. The question is certified as follows:

"The case is now pending on appeal in the Court of Civil Appeals for the Third Supreme Judicial District, and one of the material questions for decision is whether or not the cause of action sued on is such a claim as the statute required to be presented to the Commissioners Court of Mills County before suit could be brought thereon; and that question the

Court of Civil Appeals desires to and hereby does certify to the Supreme Court of the State for decision."

The question in this case has evidently arisen from the generality of the provision contained in article 677 of the Revised Statutes of 1879 (article 790 of the present Revised Statutes) and the fact that no reference is made to that provision in the act of 1893, which authorized a county, a portion of the territory of which had been incorporated in a new county, to sue the latter for a proportionate part of its existing indebtedness. Article 790 provides, in effect, that no suit shall be brought against a county unless the claim is first presented to and rejected by the Commissioners Court of the county. The act of 1893 in so far as it bears upon the question under consideration is as follows:

"That any county which has heretofore been created, or may hereafter be created, by the Legislature of the State of Texas, out of any other county or counties, shall be held liable for and bound to pay its proportion of all the liabilities of the county or counties from which it was taken, existing at the date of its creation of such new county, according to the proportionate value of the property in the excised territory, and the value of the property remaining in the old county, and a suit to recover the same may be brought by the parent county either in the District Court of such parent county or in the District Court of the newly created county, and the court shall have power to make any order or render any judgment necessary to carry out and satisfy its decree therein: Provided, that the provisions of this act shall not apply to any county the claims against which have already been placed before courts having jurisdiction thereof and tried or dismissed under laws that were at such time constitutional.

"Where any suit has been or shall be brought to enforce payment of the indebtedness created by the parent county or counties, or for the pro rata share of the excised territory, the assessment rolls of the parent county or counties for the year in which such new county was created shall be conclusive evidence of the property and value thereof remaining in the parent county at the date of the creation of such new county.

"All suits brought under this act are hereby declared to be of general public interest, and shall be given precedence upon the dockets of the courts of this State; and if the plaintiff shall recover, it shall be the duty of the Commissioners Court of the newly created county to levy a special tax on all property in the territory taken from the plaintiff county sufficient to pay off the judgment, and if the first levy be insufficient, to make said levy annually till said judgment is satisfied, and the judgment of the court shall order said Commissioners Court to make such levies." (Acts of 1893, 124.)

These provisions are incorporated in the Revised Statutes of 1895 as articles 764, 765 and 765a.

Article 790 is not inconsistent with these provisions. It does not follow, because the act referred to authorizes a suit to be brought, that it was not intended that the claim should first be presented to the Commis-

sioners Court of the county to be sued. But the question recurs, did the Legislature so intend? The rule is frequently announced that statutes in pari materia shall be construed together; but, in our opinion, a more accurate statement of the rule is, that when the construction of a statute is doubtful, in arriving at the intention of the Legislature, all previous statutes bearing upon the same subject matter should be considered, in so far as they throw light upon that intention. Strictly speaking, there is but one rule of construction, and that is, that the legislative intent must govern. All other canons of interpretation so called are but grounds of argument resorted to for the purpose of ascertaining the true meaning of the law.

In our opinion, it is not true, as counsel for the appellant county insists in his elaborate written argument, that the Constitution confers upon the Commissioners Court any general authority over the county business, but merely gives them such special powers and jurisdiction over all county business as is conferred by the Constitution itself and the laws of the State or as might be thereafter prescribed. (Art. 5, sec. 18.) We had occasion to consider this question in the case of Bland v. Orr, ante, p. 492 (39 S. W., 558) and reached the conclusion that such courts could exercise only such powers as the Constitution itself or the Legislature had specifically conferred upon them. The argument seems to be, that since the Constitution gave the Commissioners Courts general control over all county business, it is to be presumed that the Legislature intended that, in the adjustment of all claims against the county, the matter should be first submitted to their jurisdiction. If the premises were sound, the argument may be entitled to consideration. But since the premise cannot be maintained, the conclusion must fail. Besides, we think the matter under consideration was not strictly county business. The Constitutional provision referred to gives us no aid in the solution of the question.

Recurring, then, to the statutes, we think, not only that article 790 relates alone to ordinary claims against the county, and that that sued on in this case was not one of that character, but also that the language of the act quoted evinces that the Legislature did not intend that the Commissioners Court should act in the matter until the question and amount of liability had been determined by a suit in the District Court.

Article 790 should be construed as if it read: "No county shall be sued for any claim against it, unless," etc. The claim in this case is not one against Mills County. It is a claim under a right secured by the Constitution, and is a claim against that part of the county which was taken from Lampasas County. The provision of the Constitution which gives the right is as follows: "When any part of a county is stricken off and attached to or created into another county, the part stricken off shall be holden for and obliged to pay its proportion of all the liabilities then existing, of the county from which it was taken, in such manner as may be prescribed by law." (Const., art. 9, sec. 1.) The statute of 1893 was enacted in pursuance of this provision, and provides for the establishment and enforcement of the liability in favor of the parent county, against

that part of the new county, which was taken from it. Persons holding property subject to taxation in such part of the new county are alone interested in the suit. They are the real defendants, and the new county, though nominally the defendant, has no immediate and direct interest in the matter. Hence this action is not properly and substantially a suit against the county, such as is meant by the article cited.

The act of 1893 was passed after a previous act upon the same subject had been declared unconstitutional by this court. It is carefully drawn, is specific in its terms, and prescribes every step of the procedure and yet the only duty expressly enjoined by it upon the Commissioners Court of the defendant county in reference to the matter, is that of levying a tax after the liability is determined.

It may seem upon first blush that it is unreasonable to presume that the Legislature intended to provide a suit as the only means of fixing a liability in such a case, and that such a proceeding would have been prescribed only in the event of a failure of an attempt at an amicable adjustment. The argument would not have been without force if the claim was one against the county. But the county has officers and agents of its own selection, who may represent its interest. Not so with a mere part of a county. A majority of the voters in such part might not control the election of any member of the Commissioners Court; and hence the Legislature may have considered it unjust to confide to a body not of their own selection the power by an agreement with the parent county to fix upon them a liability. The Legislature may, with good reason, have considered a direct suit as the safest method by which the matter could be adjusted and the liability fixed, with justice to all parties.

We answer the question in the negative.