The STATE of Texas ex rel. PAN AMERI-
CAN PRODUCTION COMPANY et al.,
Appellants,

v.

TEXAS CITY et al., Appellees.

No. 12974.

Court of Civil Appeals of Texas.

Galveston.

Nov. 1, 1956.

Rehearing Denied Nov. 22, 1956.

Marsene Johnson, Jr., Dist. Atty. for Galveston County, Galveston, Hugh M. Patterson and Melbert D. Schwarz, Houston, and Joiner Cartwright and Charles F. Heidrick, Beaumont (Baker, Botts, Andrews & Shepherd, Houston, of counsel), for appellants.

Holman Lilienstern, Texas City (Neugent & Lilienstern, Texas City, of counsel), for appellees.

GANNON, Justice.

This is a proceeding in the nature of quo warranto brought by the State of Texas against the City of Texas City and its governing body on relation of Pan American Production Company, Sun Oil Company, Freeport Sulphur Company, John W. Mecom, and Radford Byerly, Trustee of the Mecom Trust. The purpose of the suit was to test the validity of an annexation ordinance insofar as the ordinance purports to include within the city boundaries, as extended thereby, navigable submerged lands of the State of Texas and certain mineral leasehold interests of relators therein. All of the disputed territory lies within the shorelines of Moses Lake and Dollar Bay in Galveston County. These waters together constitute a single arm or extension of Galveston Bay.

Judgment below went against the State and relators, and they appeal.

Since, in our opinion, the State and relators neither allege nor can allege facts entitling them to the relief they ask, we forego a discussion of the detail of the trial below, and treat the appeal as if the trial court had rendered judgment on the face of the pleadings without allowing the plaintiff and relators right of amendment.

A summary of the facts and contentions shown by the trial petition as clarified and altered by certain stipulated facts follows:

The City of Texas City is a home-rule city. On the 12th of November, 1954, its governing body finally enacted an ordinance extending the boundaries of the City to include a large amount of additional territory in the northerly vicinity of the City's prior existing limits. Included within the area described in the annexing ordinance are the disputed areas of Moses Lake and Dollar Bay, in parts of which relators hold leasehold estates consisting of oil, gas and minerals conveyed to them by the State of Texas. Unless restrained the defendants will place the property of relators on the tax rolls of the City of Texas City and will tax said property for municipal purposes.

Relators hold title directly from the State to the oil, gas and other minerals in two certain tracts of land numbered respectively 356 and 357. The leasehold estate in Tract No. 356 covers 726 acres and has at all times been owned exclusively by Pan American Production Company. The leasehold estate in Tract No. 357

originally leased by the State to Sun Oil Company consists of 617 acres in Dollar Bay. Eighty acres of minerals in said tract are owned jointly by Sun Oil Company, Freeport Sulphur Company, John W. Mecom, and the Mecom Trust. The remainder of the leasehold estate in this tract is wholly owned by Sun Oil Company.

Each and all of relators' leasehold estates include the usual and ordinary appurtenant surface rights reasonably necessary or desirable to conduct exploration and production operations.

At all material times oil and gas in paying quantities have been produced from each of said leases and each of said leases remains valid and subsisting.

Pan American Production Company is presently producing oil from points in strata underlying the area of its lease through eighteen producing wells, all directionally drilled from surface locations on dry land outside the boundaries of the shorelines of Moses Lake, except seven which were drilled from surface locations on the south shore of Moses Lake. The surface locations from which said seven wells were drilled lie inside the boundaries described in the annexing ordinance under review. The well heads of all other wells of Pan American Production Company lie outside of the boundaries of Texas City, however, determined. All of Pan American Production Company's producing wells are producing from points in sands located within the area described in the annexing ordinance. Each of Pan American Production Company's producing points is located far out in Moses Lake and is under submerged territory.

The mineral estate jointly owned by Sun Oil Company, Freeport Sulphur Company, John W. Mecom, and the Mecom Trust is producing from two wells directionally drilled from shore locations on the south shore of Dollar Bay. These wells are drilled to, completed at, and are producing from, sands at points well within the area

of the Bay. The leasehold estate wholly owned by Sun Oil Company is presently producing from only one well. Such well and another abandoned well originally productive of oil and gas in paying quantities were drilled as straight bore holes from barges out in the Bay. The completion and production equipment necessary to produce said wells includes a well head platform and the usual Christmas tree and fittings.

Except for relators' leasehold estates, all property interests within the shorelines of Moses Lake and Dollar Bay are owned by the State of Texas.

While appellants allege nothing in derogation of relators' surface rights in the area of Moses Lake and Dollar Bay, they do allege that with the sole exception of the platform and Christmas Tree connections on one presently producing Sun Oil Company well they have not in fact installed, and do not maintain, any physical surface production properties of any nature whatsoever within the shoreline boundaries of Moses Lake and Dollar Bay, such as platforms, pilings, derricks, tanks, pipelines, or other surface equipment. If no pipeline has ever been maintained from the straight bore holes of Sun Oil Company, it is a fair inference from the petition that the production from such well is transported to dry land either over or through the waters submerging the area of the leasehold estate by equipment capable of negotiating the trip.

It is alleged that relators' present directional methods of operation, both in drilling and producing their leases from dry land locations, are practicable and that none of relators has any present intention of ever installing "any other physical properties of the nature hereinabove referred to [surface equipment] upon the bed of said lake and/or bay or the surface waters thereof in the enjoyment of said leasehold estates." However, the right of relators to do so is not negatived.

The area described in the annexing ordinance includes 5,539 acres, of which 3,528 acres is dry land, the remaining 2,011 acres being submerged lands underlying Moses Lake and Dollar Bay. The submerged area is bounded on the west and east by dry land and on the south by the existing dry land northerly boundary of Texas City. The submerged opening where Moses Lake and Dollar Bay join Galveston Bay is approximately 2,500 feet wide. The waters in Moses Lake and Dollar Bay are navigable and are subject to tidal effects. This territory is a part of the sovereign jurisdiction of Texas and of the United States. Presently the State is exercising its regulatory jurisdiction of the area to the extent thought necessary through the Railroad Commission of Texas and the Game, Fish & Oyster Commission. Likewise the United States presently exercises its jurisdiction over navigation and navigable waters in the area through the Corps of Engineers of the United States Army. Though not alleged, we must presume the State is also exercising its taxing jurisdiction over relators' private property interests through its properly constituted executive authority, in compliance with constitutional mandates.

No humans inhabit the submerged areas covered by Moses Lake and Dollar Bay, and no structures designed for human habitation exist therein. The petition alleges that the submerged areas in controversy are not fit for human habitation or subject to being made so in the foreseeable future, and contends from this that there is neither present nor prospective need in the submerged area for police and fire fighting protection ordinarily furnished by municipal corporations to their inhabitants for the preservation of life, limb and property. It is alleged that there is no substantial traffic within the submerged area and that there is no reasonable need for municipal regulation of that which exists. In connection with these allegations it is alleged that the defendant City has no good faith intention of using any of the submerged

area in controversy for municipal purposes nor of furnishing said area with any municipal facility or service, and that the City has "purported to annex" the area in controversy solely for the purpose of taxing same and deriving additional revenue therefrom without any compensating factor to relators.

It is alleged that the charter of Texas City permits the governing body, on its own motion, to de-annex uninhabited territory "not suitable or necessary for city purposes", but that relators' prior diligent efforts at relief under such charter provision have proved fruitless despite the fact that the disputed submerged area is not suitable and necessary for city purposes.

It is claimed under the facts alleged that the portion of Moses Lake and Dollar Bay included within the description of the territory covered by the annexing ordinance is not "territory" or "additional territory" or "adjacent territory" within the meaning of the Enabling Act, Article 1175, § 2, V.A.T.S., the language of which embraces every express limitation on the right of home-rule cities to annex territory.

It is alleged that all of Moses Lake and Dollar Bay, described in the annexing ordinance, is a water area and submerged land, and property owned exclusively, except for relators' leasehold interests, by the State of Texas. On such allegations it is claimed that no part of Moses Lake or Dollar Bay may be validly annexed by a Texas municipal corporation.

Because of the foregoing facts, it is claimed that "Relators' property in and under Moses Lake and Dollar Bay", being unsuitable for human habitation, is not susceptible of being adapted to city purpose or use, and that "Relators' said leasehold properties", if permitted to be annexed by defendant, City of Texas City, would not be used for municipal purposes, and that the City has no intention of using said property for such purposes.

There are further allegations claiming that "Relators' leasehold estates and their purported inclusion within the extension of the limits of the City of Texas City bear no reasonable relation to the present needs of the City or its future growth" and that said properties and their purported annexation are wholly unrelated to the economic and municipal needs of the City of Texas City. Other allegations establish substantial expenditures by relators stemming from the directional drilling of their properties, and it is additionally alleged that the defendant City is not in position to furnish any facilities which relators may require or even use, or "to furnish any benefits or services to relators in any manner whatsoever." It is also claimed that the inclusion of "Relators' said leasehold estates" within the limits of the defendant City would subject same to ad valorem and other taxes to be levied by the defendant City, without any possibility of said properties receiving any return by way of municipal improvements, service or protection. It is alleged alternatively to the allegations that the defendant City is without color of authority to include the submerged areas in dispute within the area described in the ordinance of annexation, that under the pleaded facts the adopted ordinance, as to relators and their leasehold estates, constitutes a plain abuse of power and an arbitrary attempt to exercise the power of annexation which, unless restrained, will, insofar as said ordinance annexes relators' leasehold estates, have the effect of taking relators' property for public use without adequate compensation being first made.

There is a further claim that unless the City be restrained from proceeding under said ordinance, the levy and collection of taxes from relators will result in relators being deprived of their property without due process of law. Sections 17 and 19 of Article I of the Constitution of Texas, Vernon's Ann.St., as well as the Fourteenth Amendment to the Constitution of the United States, are specially pleaded and relied on.

It is also claimed that the annexation ordinance contravenes Section 5 of Article XI of the Constitution of Texas, which prohibits home-rule cities from adopting any ordinance containing provisions inconsistent with the State Constitution or its general laws enacted by the Legislature. It is alternatively alleged that if the ordinance be not void, it is at least voidable as an arbitrary and unjust exercise, that is to say, a plain abuse of power, at least as to the property of relators.

In their brief appellants bring forward four formal points of error; however, reduced to their essentials, these points embrace but two grounds of error upon which appellants rely for reversal. These grounds may be stated as follows: (a) Under the Constitution and laws of the State, home-rule cities have no power to annex submerged navigable State-owned land; (b) The ordinance in practical operation by reason of the levy of municipal taxes upon relators' properties will deprive relators of their property without due process of law, since, as a matter of law, the ordinance is wholly unrelated to any economic or municipal need of the City of Texas City, and under the facts alleged is incapable of producing any benefit however slight to relators or their property. On these claims, which the appellants say the facts alleged establish as a matter of law, appellants contend the legislation is a plain and palpable abuse of power, a legal fraud, violative of the due process clauses of the State and Federal Constitutions, each and both.

The Power of Home-Rule Cities to Annex Submerged Navigable State-Owned Lands

It is now thoroughly settled Texas law that home-rule cities, absent a palpable abuse of power, may annex any territory within the State provided only that it lie adjacent to the municipality. Vernon's Annotated St.Const. Art. 11, § 5; Vernon's Annotated Texas Statutes, Art. 1175, § 2;

City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928; City of Gladewater v. State ex rel. Walker, 138 Tex. 173, 157 S.W.2d 641. If, then, the submerged and navigable area of Moses Lake and Dollar Bay under consideration may be said to be territory adjacent to Texas City, there can be no doubt of the right of the City of Texas City to annex any of such area unless, because beyond the plain legislative intent, we are able to read into Section 2 of Article 1175, V.A.T.S., an implied exception of State-owned navigable submerged areas.

The case of City of Wichita Falls v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434, is authoritative on the proposition that a remote area owned by the United States government and used by it as a military reservation, and temporarily under its exclusive jurisdiction, and connected to the City of Wichita Falls only by a narrow stem some ten miles in length, constitutes territory lying adjacent to the City of Wichita Falls. It is inescapable from this decision, we feel, that any government-owned territory—state or federal—is within the meaning of the statutory phrase "additional territory lying adjacent" to cities. This being so, we fail to see how the fact of State ownership of an area can logically be urged as an element to be considered in determining whether a particular area is either territory or adjacent.

Nor do we consider the fact that the territory here involved is submerged and navigable material to these questions. We are referred to Senate Bill No. 298, Acts of 1913, page 47, Ch. 25, for "a clear legislative pronouncement" that absent express statutory authority, Texas cities are wanting in power to annex *navigable territory.* This proposition is independently presented, and is not said to be dependent upon the fact of *State ownership.* Senate Bill No. 298 was enacted into law some days prior to the enactment of the Home-Rule Enabling Act. However, had both pieces of

legislation passed into law simultaneously we would still be unable to accept the claim made for Senate Bill No. 298, for we see in it not an extension of authority to cities to annex navigable streams, but rather an extension of authority to annex *remote territory up to twenty miles from the ordinary boundaries of cities,* a power which plainly, but for the legislation, the designated cities would not have had. A later statute enacted in 1933, Article 1187a, impresses us as legislative recognition of a prior existing right in home-rule cities to annex navigable submerged territory. From the language of that statute we are convinced that the phrase "additional territory lying adjacent" in Article 1175, § 2, does not carry an implied exception of navigable submerged territory, because Section 1 of Article 1187a presupposes that home-rule cities may have deep water ports "located within the limits of said" cities.

Appellants cite cases holding that the word "adjacent" is of elastic meaning, to be determined by the context in which used, surrounding facts and circumstances, and the subject matter which it qualifies. Typical of these is State ex rel. Childs v. Village of Minnetonka, 57 Minn. 526, 59 N.W. 972, 974, 25 L.R.A. 755, holding that the phrase "lands adjacent" was not designed to cover *"remote* territory, having no natural connection with the village, and no adaptability to village purposes * * *." We find nothing in these cases contrary to our conclusion that submerged navigable State-owned territory reasonably near to the boundaries of home-rule Texas cities is "additional territory lying adjacent" to such cities, as that phrase is used in Section 2 of the Enabling Act, Art. 1175, V.A.T.S. We hold that under our presently existing Constitution and State laws, home-rule cities have plenary power to annex State-owned navigable submerged territory lying adjacent to their existing boundaries, subject only to constitutional inhibitions against palpably arbitrary abuse of the power.

### The Contention that the Annexation Ordinance under Review Deprives Relators of Their Property without Due Process of Law

We entertain no doubt that the due process clauses of the State and Federal constitutions constitute an effective restraint upon all powers of State government, whether legislative, executive or judicial. This is clearly true of Art. 1, § 19 of the State Constitution, which is one of twenty-nine sections designated as a Bill of Rights, consisting of *"express limitations of power."* Travelers' Insurance Co. v. Marshall, 124 Tex. 45, 76 S.W.2d 1007, 1009, 96 A.L.R. 802. The legislative power is no exception. 9 Tex.Jur., page 449, Constitutional Law, Sec. 35; Houston & T. C. Ry. Co. v. Dallas, 98 Tex. 396, 84 S.W. 648, 70 L.R.A. 850. See also the interpretive commentary under Art. I, § 19, Vernon's Texas Constitution.

The right of property is a fundamental, natural, inherent, and inalienable right, not of grace from the Legislature, but "ex debito from the Constitution." 11 Amer.Jur., page 1145, Constitutional Law, Section 335. This right of property, which embraces all the incidents of property, is a sacred and fundamental one. Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387. Its denial has no place in a government of free men; however, like any other right held in a free society, the right of property is subject to the reasonable exercise of the police and taxing power of the State. So, it can no longer be claimed that the reasonable exercise by the State of its proper power to enact taxing laws or police regulations constitutes deprivation of property without due process of law. It is true also that short of palpable abuse, concerning which *the minds of reasonable men could not differ*, the right to determine upon the wisdom and reasonableness of legislation lies exclusively in the legislative department—not subject to review by the judicial department on any considerations of wisdom or policy—but only for plain palpable, arbitrary injustice irreconcilable with the natural and inalienable rights of citizens. This is but another way of saying that a claim of deprivation of property without due process is to be determined always as a matter of law, never as a question of fact, although such determination may involve the finding of facts. We quote the text of 82 C.J.S., Statutes, § 79, p. 134, "Whether a seeming act of a legislature is or is not a law is a judicial question to be determined by the court, and not a question of fact to be tried by a jury, even though a determination of the question may involve a finding of fact." The principle has been recognized in Texas. See Hurt v. Cooper, Tex.Civ.App., 113 S.W. 2d 929, 942.

The party claiming legislation to be invalid as constituting a deprivation of property without due process carries a heavy burden. He must establish such invalidity "clearly or beyond a reasonable doubt, and must overcome, by facts judicially known or proved, not only *the evidence sustaining constitutionality*, but *any state of facts which can be reasonably conceived to sustain it."* (Emphasis added.) 16 C.J.S., Constitutional Law, § 99, p. 407. Differently stated, the rule appears to be that constitutional invalidity must appear conclusively, plainly or palpably, and beyond any and all reasonable doubt. There is always a presumption of constitutional validity and it is especially strong in respect to statutes relating to taxation. Nor may that presumption be rebutted on *mere general conclusions* of fact or of law alleged in a petition. See Le Clair v. Swift, D.C. Wis., 76 F.Supp. 729. Courts are not free to declare a statute unconstitutional where there is room for a fair difference of opinion, but only for clear and compelling reasons. However, we are not to be understood, from the foregoing, as recognizing that the Supreme Court case of City of Gladewater v. State ex rel. Walker, 138 Tex. 173, 157 S.W.2d 641, holds that courts have no power to review legislation even

when attacked on constitutional grounds. This seems to be the construction put upon that case by defendant, City of Texas City. In our view, the Gladewater case must be read and construed in the light of the contentions there made. The real basis of appellant's contention in the Gladewater case, we infer, was that the court was bound by the jury's verdict establishing the unreasonableness of an ordinance, since there was complaint that the judgment of the trial court was rendered *non obstante veredicto*. If, as we understand it, questions of due process are always to be decided, not as a fact question, but as a matter of law; then it is plain that juries should not be permitted to review the reasonableness or wisdom of legislation, directly or indirectly. In fact, no issue should ever be submitted to a jury unless the minds of reasonable men could differ thereon. Granted that premise, the questions upon which the jury passed in the Gladewater case were purely political in character, plainly issues of fact and not of law, and should never have been submitted to the jury. As we read the Gladewater case, the Supreme Court merely went along with the trial court's holding, that the plaintiffs had failed to negative every reasonably conceivable ground upon which the annexation ordinance there involved could be sustained. This interpretation is buttressed, we think, by the opinion of the same Court in the West University Place case, supra, two years later, where it is plainly held that courts do have power to review annexation ordinances when it appears from facts judicially known to the court or otherwise established that such ordinances are wholly unrelated to the municipal and economic needs of the city. In the latter case the Court actually reviewed the annexing ordinance for constitutionality but found itself unable to say in the light of the record in that particular case that the territory there involved "was so unrelated to petitioners' economic and municipal needs as to be wholly unreasonable and arbitrary and for that reason subject to judicial review." [142 Tex. 190, 176 S.W.2d 931]

Here the territory sought to be annexed is not remote from the prior existing boundaries of Texas City. In fact, it is contiguous to them, and it is clear to us, not necessarily that there are, but that there may be reasonable bases for the annexation of the territory by Texas City. It could very well be needed, or a least thought desirable for port facilities, docks, piers, a ship channel, and, perhaps a turning basin. It might be desirable for use as a public park for fishing, boating, etc. We are not concerned, nor permitted to concern ourselves, with the actual motivation of the defendant city, but only with whether there might have been, or might be reasonably conceivable grounds to justify the annexation of the territory as having some desirable relation to the City's economic and municipal needs, governmental or proprietary. In determining the desirability of the annexation, the City of Texas City is entitled to take into consideration not only relators' present activities, but its past activities and what they may decide to do in the future, and, as well, what other State lessees may conclude to do. It could very well come to pass that permissible exploration and producing activities of relators and other lessees would give rise to reasonable need for police and fire protection. Such regulations may very well be in relators' own interest and in the interest of other potential lessees. There is no constitutional requirement that ad valorem taxes which may be levied by the City of Texas City on relators' property be used to produce benefits to relators exactly equal in monetary value to the amount of taxes. It is only necessary that it be conceivably reasonable that some such benefits may result. Our ruling is thought to be well within the spirit of Myles Salt Co. v. Board of Com'rs of Iberia Drainage District, decided by the Supreme Court in 1916, 239 U.S. 478, 36 S.Ct. 204, 206, 60 L.Ed. 392. That

case involved a drainage district—a form of municipal corporation—organized for "the special purpose of the improvement of particular property". The facts in that case established that the inclusion of relators' property in the drainage district could be of no possible benefit to either relators or to other property in the district. There the court actually considered and rejected the possibility that relators' elevated property might be used as a receptacle for stagnant water which would otherwise be a menace to health if not included within the district. The Court said: "But there may be other purposes, defendants say, and, besides, that the benefit to the property need not be direct or immediate; it may be indirect, such as might accrue by reason of the general benefits derived by the surrounding territory. But such benefit is excluded by the averments, and it certainly cannot be said that the elevated land of Weeks Island could be a receptacle for stagnant water, or would be otherwise a menace to health if not included within the district, or would defeat the purpose of the law, which seems to have been the ground of decision in George v. Young, 45 La.Ann. 1232, 14 So. 137."

It is significant, we think, that the federal Supreme Court has passed on no case since 1916 complaining on constitutional grounds of the annexation by an ordinary city of additional territory. To our minds it is also significant that we are cited to no case by our State Supreme Court where the annexation of additional territory by an ordinary municipal corporation has been declared void on the basis of the plain palpable abuse of power contrary to the due course of the law of the land provision of the State Constitution, though the right and duty of courts to review the legislation when attacked on such grounds is clearly implied from very early Texas decisions. See Ewing v. State ex rel. Pollard, 1891, 81 Tex. 172, 16 S.W. 872, 874, where the court said: "So, also, if the legislature had provided that the cities proposing to incorporate under the general laws should be empowered to embrace territory lying beyond their actual limits, it may be that, *in the absence of a clear abuse of the power*, it would be the duty of the courts to respect the legislative will, and to hold an incorporation including such additional territory valid." (Emphasis added.) See also State v. City of Waxahachie, 81 Tex. 626, 17 S.W. 348, 350, where, in construing the statute there under review, the court held the right to annex certain excess territory to come fairly within the spirit of the statute because the territory might be said to be "in some respects useful and material."

Since, in our opinion, neither the facts alleged nor any which could be alleged may negative the reasonable possibility that the area involved in the attack on the annexation ordinance may be "useful and material" or, in some aspect, related to conceivable economic and municipal needs of the City of Texas City, we feel that relators' claim of unconstitutionality based on the due process clauses must be overruled.

Affirmed.

CODY, J., not sitting.