Jimmy VINSON et al., Petitioners,

v.

Vic BURGESS et al., Respondents.

The COMMISSIONERS COURT OF
ELLIS COUNTY, Texas et al.,
Petitioners,

v.

Marilyn G. WINBORNE, Respondent.

Nos. C–7942, C–8101.

Supreme Court of Texas.

May 31, 1989.

Gregg M. McLaughlin, Arlington, for petitioners in No. C–7942.

Ron Johnson, Waxahachie, for respondents in No. C–7942.

William E. Trantham, Dallas, for petitioners in No. C–8101.

Earl Luna, Dallas, for respondent in No. C–8101.

SPEARS, Justice.

In this consolidated appeal the sole issue presented is whether section 26.07 of the Texas Property Tax Code is constitutional as applied to counties. Subsection (a) of section 26.07 provides:

> If the governing body of a taxing unit other than a school district adopts a tax rate that exceeds the rollback tax rate calculated as provided by Section 26.04 of this code, the qualified voters of the taxing unit by petition may require that an election be held to determine whether or not to reduce the tax rate adopted for the current year to the rollback tax rate calculated as provided by Section 26.04 of this code.[1]

In the first cause, *Vinson v. Burgess,* taxpayers in Denton County presented a petition to their commissioners court for a tax "rollback" election pursuant to section 26.07 of the Property Tax Code. The com-

missioners court of Denton County refused to certify the petition, citing irregularities with particular signatures. Vinson and other taxpayers thereafter brought suit seeking a writ of mandamus to compel the commissioners court to certify the petition and order an election to be held pursuant to section 26.07. The trial court granted summary judgment in favor of the commissioners court, and Vinson appealed.

The court of appeals in Fort Worth initially held that the method used to determine the validity of the petition was neither fair nor reasonable and reversed the judgment of the trial court. However, on motion for rehearing, the court withdrew its judgment and opinion, and affirmed the judgment of the trial court. The court of appeals held that section 26.07 of the Property Tax Code is unconstitutional as applied to counties because it conflicts with article VIII, sections 1–a and 9 of the Texas Constitution. 755 S.W.2d 481. The court said: "The people, acting in their capacity as the ultimate sovereign ... have adopted the constitutional provisions [article VIII, sections 1–a and 9] which delegate the authority to set tax rates to the commissioners courts of this state." 755 S.W.2d at 486. The court of appeals reasoned that section 26.07 of the Property Tax Code, which allows taxpayers a method to change the property tax rates after they have been set, would be an unconstitutional infringement upon the power of commissioners courts. *Id.*

In the second cause, *Commissioners' Court of Ellis County v. Winborne,* the commissioners court of Ellis County adopted tax rates amounting to a 32.8% increase in the rate adopted for the previous year. In November 1987 a tax "rollback" petition with the names of 7,000 voters was presented to the commissioners court pursuant to section 26.07 of the Property Tax Code. This petition asked that an

---

1. The "rollback tax rate" is that rate which exceeds the "effective tax rate" by eight percent. As section 26.04(c)(1) provides:

$$\text{the "effective tax rate"} = \frac{(\text{last year's levy} - \text{lost property levy})}{(\text{current total value} - \text{new property value})}$$

As amended by Acts 1987, 70th Leg., ch. 947 § 3.

Thus, section 26.07 provides taxpayers a method

election be called to reduce property tax rates for the year 1987. The commissioners court, however, refused to hold the election on the grounds that the Property Tax Code is inapplicable to taxes adopted pursuant to article VIII, sections 1–a and 9 of the Texas Constitution. Winborne, a taxpayer, thereafter filed a writ of mandamus to compel the commissioners court to order a "rollback" election pursuant to section 26.07 of the Property Tax Code. The trial court, however, refused to grant the writ of mandamus and Winborne appealed.

The court of appeals in Waco reversed the judgment of the trial court and held that a "rollback" election pursuant to section 26.07 is not expressly forbidden by the constitution. 757 S.W.2d 876. The court of appeals reasoned that article I, section 27 of the constitution provides citizens with the right to petition their government, and section 26.07 of the Property Tax Code is the means by which the taxpayers may exercise that power of petition. The court of appeals further explained: "Considering Article VIII, Sections 1–a and 9, in its entirety, it is clear to us that the designation of the Commissioners' Court as the fixer of rates was simply for the purpose of promoting the prompt conduct of business in *commencing* the rate-fixing process." (Emphasis added.) *Id.* at 879.

### I.

■ No provision in the constitution should be read or construed in isolation. In *Collingsworth County v. Allred,* 120 Tex. 473, 40 S.W.2d 13 (1931), this court explained:

The Constitution must be read as a whole, and all amendments thereto must be considered as if every part had been adopted at the same time and as one instrument, and effect must be given to each part of each clause.... *Different sections,* amendments, or provisions of a Constitution *which relate to the same subject-matter should be construed to-*

*gether* and considered in the light of each other.

120 Tex. at 479, 40 S.W.2d at 15. (Emphasis added.) Therefore, the particular provisions relating to taxation should be construed together and in conjunction with all provisions of our state constitution.

We begin with the inalienable rights reserved to the citizens of this state by the Bill of Rights to the Texas Constitution. Article I, section 1 of the Texas Constitution proclaims:

Texas is a free and independent State, subject only to the Constitution of the United States, and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the *right of local self-government,* unimpaired to all the States. (Emphasis added.)

This section has been interpreted as a means to protect the citizens from the abuses of governmental power. Calkins, *The Need for Constitutional Revision in Texas,* 21 Tex.L.Rev. 479, 480 (1943). "The abuses and extravagances of the Davis regime, judicial incompetence, *mounting tax rates* ... and the general misrule of the Reconstruction Period combined to produce a general reaction and distrust in government." *Id.* (Emphasis added.) Those who framed the Texas Constitution of 1876 felt themselves justified in writing into that instrument a bill of rights which would bid defiance to future injustice and misrule.

Similarly, in article I, section 2 it is guaranteed that:

*All political power is inherent in the people,* and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a *republican form* of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient. (Emphasis added.)

---

to repeal the rate increase only to the extent it is in excess of eight percent of the "effective tax

rate."

Of equal importance is article I, section 27 which specifically grants citizens the right to petition by declaring:

> The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, *by petition*, address or remonstrance. (Emphasis added.)

Article I, sections 1, 2 and 27 exemplify an intent of the people to retain the ultimate political power and to maintain "checks and balances" upon all governing bodies.

## II.

The first main argument advanced for holding section 26.07 unconstitutional is that sections 1–a and 9 of article VIII confer "exclusive" authority upon the commissioners court to set property tax rates and the legislature by statute cannot remove governmental power conferred by the constitution. *See City of Fort Worth v. Howerton*, 149 Tex. 614, 236 S.W.2d 615 (Tex. 1951). The argument continues that under Op.Tex.Att'y Gen. No. JM–792 (1987), section 26.07, which allows taxpayers a method to reduce their property tax rates after they have been set, is unconstitutional to the extent that it acts to circumvent the authority of a commissioners court.

■ In determining the constitutionality of a statute passed by the legislature, we begin with a strong presumption of its validity. *Smith v. Davis*, 426 S.W.2d 827 (Tex.1968). *See also State v. City of Austin*, 160 Tex. 348, 331 S.W.2d 737 (1960); *Texas National Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627 (1939). This presumption exists because of the equal presumption that legislators do not intend to enact unconstitutional laws.

Moreover, Texas courts have viewed tax legislation as deserving special consideration. In *State v. Texas City*, 295 S.W.2d 697, 704 (Tex.Civ.App.—Galveston 1956), *aff'd*, 303 S.W.2d 780 (Tex.1957), *appeal dismissed*, 355 U.S. 603, 78 S.Ct. 533, 2 L.Ed.2d 523 (1957), the court of appeals said, "There is always a presumption of constitutional validity [with regard to legislation] and it is especially strong in respect to statutes relating to taxation." Therefore, in the present action it must be shown that section 26.07 clearly appears to violate some provision of the constitution.

■ In deciding whether article VIII, sections 1–a and 9 of the Texas Constitution confer "exclusive" authority upon the Commissioners Court to set ad valorem tax rates, we look first to the specific language used and the purposes behind the passage of both provisions and read such provisions in conjunction with the Bill of Rights. Section 1–a of article VIII provides in pertinent part:

> [T]he *several counties of the State are authorized to levy ad valorem taxes* upon all property within their respective boundaries for county purposes, except the first Three Thousand Dollars ($3,000) value of residential homesteads ..., not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of this State, provided the revenue derived therefrom shall be used for construction and maintenance of Farm to Market Roads or for Flood Control, except as herein otherwise provided. (Emphasis added.)

The term "commissioners court" is not used at any point in section 1–a. That section authorizes "counties" to levy ad valorem taxes "not to exceed thirty cents (30¢) on each one hundred dollars" and fails to mention "commissioners court."

Attempts to construe "county" as synonymous with "commissioners court" have consistently been rejected by Texas courts. *Mills County v. Lampasas County*, 90 Tex. 603, 40 S.W. 403 (1897), involved a claim against the County of Lampasas which had not been presented to its commissioners court. The contention was that article V, section 18 of the constitution [2]

---

2. Article V, section 18(b) provides in pertinent part:

The County Commissioners so chosen, with the County Judge as presiding officer, shall

confers on the commissioners court general authority over county business and failure to present the claim first to the commissioners court required rejection of such claim. In refusing to follow that argument, this court stated, "[I]t is not true ... that the constitution confers upon the commissioners' court any general authority over the county business...." 90 Tex. at 606, 40 S.W. at 404. This was again affirmed by this court in *Anderson v. Wood*, 137 Tex. 201, 203, 152 S.W.2d 1084, 1085 (1941) when we expressly held that under article V, section 18, "[T]he jurisdiction of the commissioners' court over county business is not general and all-inclusive...." This court further observed in *Canales v. Laughlin*, 147 Tex. 169, 173, 214 S.W.2d 451, 453 (1948): "The Constitution does not confer on the commissioners courts 'general authority over the county business' and such courts can exercise only such powers as the Constitution itself or the statutes have 'specifically conferred upon them.'"

The legislative history of section 1-a reveals that a primary purpose behind its passage in 1948, in addition to setting maximum tax rates and providing for a homestead exemption, was to shift the power to levy ad valorem taxes from the state to the several "counties" of the state. TEX. CONST. article VIII, section 1-a, interp. commentary (Vernon 1955). There is no evidence, however, that the drafters intended to grant authority to levy ad valorem taxes on any entity other than "counties." As observed earlier, the term "county" has not been construed to be synonymous with "commissioners court."

Therefore, we interpret section 1-a, not as a grant of exclusive authority upon commissioners courts, but as a *limitation* upon counties as to the amount of ad valorem taxes counties are authorized to levy. This conclusion is supported by our holding in *LeCroy v. Hanlon*, 713 S.W.2d 335 (Tex. 1986), when we stated:

> Texans have adopted state constitutions to restrict governmental power and guarantee individual rights. The powers restricted and the individual rights guaranteed in the present constitution reflect Texas' values, customs, and traditions. *Id.* at 339.

*See also Government Services Insurance Underwriters v. Jones*, 368 S.W.2d 560 (Tex.1963); *Perkins v. State*, 367 S.W.2d 140 (Tex.1963); *Shepherd v. San Jacinto Junior College*, 363 S.W.2d 742 (Tex.1962).

## III.

■ We now turn to article VIII, section 9 to determine whether that section grants exclusive authority to commissioners courts to set ad valorem tax rates. Section 9 provides:

> The State tax on property, ... shall never exceed Thirty-five Cents ($.35) on the One Hundred Dollars ($100) valuation; and *no county, city or town shall levy a tax rate in excess of Eighty Cents ($.80)* on the One Hundred Dollars ($100) valuation in any one (1) year for general fund, permanent improvement fund, road and bridge fund and jury fund purposes; provided further that at the time the *Commissioners Court meets to levy the annual tax rate for each county it shall levy whatever tax rate may be needed for the four (4) constitutional purposes;* namely, general fund, permanent improvement fund, road and bridge fund and jury fund so long as the Court does not impair any outstanding bonds or other obligations and so long as the total of the foregoing tax levies does not exceed Eighty Cents ($.80) on the One Hundred Dollars ($100) valuation in any one (1) year. Once the Court has levied the annual tax rate, the same shall remain in force and effect during that taxable year; and the *Legislature may also authorize an additional annual ad valorem tax* to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property taxpaying voters of the county voting at an election to be held for that

compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred

by this Constitution and the laws of the State....

purpose shall vote such tax, not to exceed Fifteen Cents ($.15) on the One Hundred Dollars ($100) valuation of the property subject to taxation in such county. Any county may put all tax money collected by the county into one general fund, without regard to the purpose or source of each tax. And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws. *This Section shall not be construed as a limitation of powers delegated to counties,* cities or towns by any other Section or Sections of this Constitution. (Emphasis added.) (1876, amended 1967).

The term "commissioners court" is used in section 9 of article VIII: "... at the time the *Commissioners Court* meets to levy the annual tax rate for each county it shall levy whatever tax rate may be needed for the four (4) constitutional purposes." (Emphasis added.) It is argued that this language evinces an intent by the legislature that commissioners courts have the exclusive authority to set ad valorem tax rates and that usage of the word "shall" mandates such an interpretation.

Article VIII, section 9 refers to entities other than the commissioners court which are designated as having authority to set tax rates or to implement additional taxes: "[N]o *county,* city or town shall levy a tax rate in excess of Eighty Cents ($.80)" and further, "the *Legislature* may also authorize an additional annual ad valorem tax ... provided, that a majority of the qualified property taxpaying *voters* ... shall vote such tax." (Emphasis added.) The identification of such other entities within the ad valorem rate-making process is inconsistent with the argument that article VIII, section 9 grants "exclusive authority" upon the commissioners court to set ad valorem tax rates.

The term "shall" as used in section 9 is not inflexibly mandatory. In *Chisholm v. Bewley Mills,* 155 Tex. 400, 403, 287 S.W.2d 943, 945 (1956) this court explained:

Although the word "shall" is generally construed to be mandatory, it may be and frequently is held to be merely directory.... *[C]onsideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction.* Provisions which are not of the essence of the thing to be done, but which are included for the purpose of promoting the proper, orderly and prompt conduct of business, are not generally regarded as mandatory. (Emphasis added.)

According to *Chisholm,* to determine whether the legislature intended a particular provision to be mandatory, the courts look at the history and purpose behind the passage of the particular act.

Article VIII, section 9, of the Texas Constitution as adopted in 1876, provided:

The State tax on property, ... shall never exceed fifty cents on the one hundred dollars valuation, and no county, city or town shall levy more than one half of said State tax, except for the payment of debts already incurred....

It is apparent that the sole purpose behind the passage of article VIII, section 9 in 1876 was to limit property tax rates. Neither the constitutions of 1845, 1861, 1866, nor that of 1869 fixed a limit for the tax rate for state, county, or muncipal purposes, but left these tax rates to the discretion of the legislature.

In 1883, section 9 was amended, lowering the state tax rate from $.50 to $.35, while retaining the $.25 limit for city or county purposes. It was again amended in 1890 to authorize the legislature to provide for a $.15 local road tax and in 1907 to provide for a $.15 tax to pay jurors.

In 1944, article VIII, section 9 was amended to provide a limit on the total amount the state and several counties could tax. In the 1944 amended version, for the first time the term "commissioners court" was used within section 9. This amended version read:

The State tax on property, ... shall never exceed thirty-five (35) cents on the one hundred dollars valuation; and *no county, city or town shall levy more than twenty-five (25) cents for city or county purposes, and not exceeding fifteen (15)*

*cents for roads and bridges, and not exceeding fifteen (15) cents to pay jurors,* on the one hundred dollars valuation, ... and for the erection of public buildings, streets, sewers, waterworks and other *permanent improvements, not to exceed twenty-five (25) cents* on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; provided, however, that the *Commissioners Court* in any county may re-allocate the foregoing county taxes by changing the rates provided for any of the foregoing purposes by either increasing or decreasing the same, *but in no event shall the total of said foregoing county taxes exceed eighty (80) cents on the one hundred dollars* valuation, in any one year; provided further, that before the said *Commissioners Court* may make such re-allocations and changes in said county taxes that the same shall be submitted to the qualified property tax paying voters of such county at a general or special election, and shall be approved by a majority of the qualified property tax paying voters.... (Emphasis added.)

In comparing the 1944 version with the present amended version, we are able to determine the purposes behind article VIII, section 9. The 1944 version placed an overall limitation of $.80 upon the total amount that counties could tax. At the same time, this section limited the amount the counties could tax for each of the four constitutional purposes; namely, $.25 for the general fund, $.15 for roads and bridges, $.15 to pay jurors and $.25 for permanent improvements. This section then allowed the *commissioners court,* upon approval by the taxpayers, to reallocate the county taxes between the four constitutional funds so long as the total county tax rate did not exceed $.80 on the $100 valuation.

When section 9 of article VIII was amended in 1967, a major change made to this 1944 version was the elimination of the limits upon the amount that the counties could tax for each of the four separate constitutional purposes. The present version reads: "the Commissioners Court ... shall levy whatever tax rate may be needed

for the four (4) constitutional purposes; ... so long as the total of the foregoing tax levies does not exceed Eighty Cents ($.80) on the One Hundred Dollars ($100) valuation in any one (1) year." The present version further provides: "Any county may put all tax money collected by the county into one general fund, without regard to the purpose or source of each tax." The present version thus retains the limitation of eighty cents, but allows counties the ability, through the commissioners court, to allocate portions of their expected revenue to any of the four constitutional purposes.

In reviewing the history of and amendments to article VIII, section 9, it becomes clear that the substantive purposes behind its passage in 1967 were (1) to place an overall limitation on the amount that the state and counties could tax and (2) to eliminate the specific limitations placed upon the rates allocated to the four constitutional purposes. There is no indication of an intent to confer "exclusive" authority to set tax rates upon the commissioners court. Any such interpretation is inconsistent with the final sentence of the section which reads:

> This Section shall not be construed as a limitation of powers delegated to *counties,* cities or towns by any other Section or Sections of this Constitution. (Emphasis added.)

Considering section 9 in its entirety, its history, nature and objective, it is clear that the designation of the commissioners court as the body to set rates was included simply for the purpose of promoting proper, orderly and prompt conduct of business. We therefore hold that section 26.07 does not conflict with article VIII, section 9 of the Texas Constitution.

## IV.

The final argument for holding section 26.07 unconstitutional is that such section conflicts with that portion of article VIII, section 9 which states: "Once the [commissioners] Court has levied the annual tax rate, the same shall remain in force and effect during that taxable year." The ar-

gument follows that the rate set by a commissioners court will not remain in force and effect during "that taxable year" if taxpayers are given the opportunity, through section 26.07 of the Property Tax Code, to change such rate before the close of the taxable year.

■ The legislature may specify the means and procedure by which substantive provisions in the constitution are to be made effective. In *Stevenson v. Blake*, 131 Tex. 103, 107, 113 S.W.2d 525, 527 (1938) this court, in addressing the limitations of article VIII, section 9, held: "[T]he Legislature, under its general lawmaking power, has the authority to regulate all matters pertaining to the levying and assessing of the annual ad valorem taxes for general county purposes, and to prescribe the time for their payment," subject to the constitutional limitation as to rate. Although *Stevenson* was decided well before the final amended version of article VIII, section 9, it is important because of the identification of the legislature as the implementing body for substantive law.

■ Notwithstanding that article VIII, section 9 does specify a time period of one year, we find that the legislature intended such provision not to be mandatory but merely directory and subject to other provisions in the constitution. The Attorney General in effect so ruled in Opinion No. C–701 (1966). This opinion addressed the specific language used in article VIII, section 9 and concluded that a tax rate adopted for one year could remain in effect for an additional year in the event the commissioners court failed to adopt a new tax rate prior to July 20. Thus, a tax rate could remain in effect for two, three or more years, assuming the commissioners court fails to act.

From both the constitutional history and language, we conclude that section 9's provision that "the same shall remain in force and effect during that taxable year" was intended to be *subject to* other provisions in the constitution. Such an interpretation is analogous to the treatment given by this court to similar language. For example,

article III, section 3 of the Texas Constitution provides in part:

The Senators shall be chosen by the qualified electors for the term of four years; ... and *shall serve* thereafter for the full term of years to which elected.... (Emphasis added.)

Although the above quoted language appears to mandate a period of four years, this section is subject to other sections in the constitution; namely, article XV, section 1, providing for impeachment and article III, section 23, providing for removal.

Similarly, section 9 of article VIII is not mandatory but is subject to other provisions in our constitution which have reserved power with the citizens and legislature to participate in the ad valorem rate-making process. We hold that section 26.-07 of the Property Tax Code does not conflict with article VIII, section 9 of the Texas Constitution.

### V.

We therefore affirm the judgment of the court of appeals in *Commissioners' Court of Ellis County v. Winborne.* We reverse the judgment in *Vinson v. Burgess* and remand to the court of appeals so that such court may readdress the four points of error previously brought before it complaining of the method by which the commissioners court of Denton County determined the validity of the taxpayers' petition.

GONZALEZ, J., files a dissenting opinion.

GONZALEZ, Justice, dissenting.

While it is true that the Texas Constitution does not confer *general* authority to the commissioners court over county business, article VIII, sections 1–a and 9 affirmatively grant to commissioners courts the specific power to set tax rates. Section 26.07(a) of the Texas Tax Code authorizes voters to petition for a tax roll back election. Since a statute cannot override the constitution, *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 155 (1942), and since the legislature is powerless to enact

any law contrary to a provision of the constitution, *City of Fort Worth v. Howerton,* 149 Tex. 614, 236 S.W.2d 615, 618 (1951), section 26.07(a) of the Tax Code is unconstitutional.

I obviously view this case from a different perspective. It is true that our state constitution, unlike the federal constitution, does not act as a source of power to the legislature but acts solely as a limitation on the legislature. In other words, "[a]ll power which is not limited by the constitution inheres in the people, and an act of the state legislature is legal when the Constitution contains no prohibition against it." *Shephard v. San Jacinto Junior College Dist.,* 363 S.W.2d 742, 743 (Tex.1962) (quoting *Watts v. Mann,* 187 S.W.2d 917, 923 (Tex.Civ.App.—Austin 1945, writ ref'd)). However, unlike the state legislature, counties (through their elected officials) cannot act unless they have power granted to them. *Canales v. Laughlin,* 147 Tex. 169, 214 S.W.2d 451, 453 (1948); *see also* Tex. Const. art. V, § 18(b). Therefore, when looking at constitutional provisions relevant to counties, we look for *grants* of power rather than *limitations* of power. Further, if the power is conferred on the counties, the commissioners courts have broad discretion in exercising that power. *Canales,* 214 S.W.2d at 453.

If the citizens want the right to call roll back elections, the only way to achieve this end is by constitutional amendment, not by statute. Since Texas Tax Code section 26.-07(a) conflicts with article VIII, sections 1–a and 9 of the constitution, it is unconstitutional as it applies to counties. I would therefore affirm the judgment of the court of appeals in *Vinson v. Burgess* and would reverse and render the court of appeals' judgment in *Commissioners Court v. Winborne.*