

# The Attorney General of Texas

August 3, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Harvey Davis
Executive Director
Department of Water Resources
P. O. Box 13087, Capitol Station
Austin, Texas    78711

Opinion No.  MW-500

Re:   Authority of county to
incur indebtedness to finance
construction and maintenance
of sewage treatment works

Dear Mr. Davis:

You ask whether a Texas county has the authority to incur short-term and long-term indebtedness to finance the construction costs of sewage treatment works, insure adequate operation and maintenance of the works throughout its jurisdiction, and carry out its responsibilities under an area wide water quality management plan.

It is well settled that counties have only those powers which are clearly set forth in the state constitution or statutes and those which must necessarily be implied in order for them to accomplish their expressly granted powers. Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948); Mills County v. Lampasas County, 40 S.W. 403 (Tex. 1897); Harrison County v. City of Marshall, 253 S.W.2d 67 (Tex. Civ. App. – Fort Worth 1952, writ ref'd); Wichita County v. Vance, 217 S.W.2d 702, 703 (Tex. Civ. App. – Fort Worth 1949, writ ref'd n.r.e.). It is equally well established that pursuant to article XI, sections 5 and 7 of the Texas Constitution, any city or county obligation payable from tax revenues to be collected beyond the budget year of its creation constitutes debt. McClellan v. Guerra, 258 S.W.2d 72 (Tex. 1953); T. and N.O.R. Company v. Galveston County, 169 S.W.2d 713 (Tex. 1943); Ault v. Hill County, 116 S.W. 359 (Tex. 1909); Pendleton v. Ferguson, 89 S.W. 758 (Tex. 1905); City of Tyler v. Jester, 78 S.W. 1058 (Tex. 1904); McNeal v. City of Waco, 33 S.W. 322 (Tex. 1895).

There is no provision in the Texas Constitution which expressly authorizes counties to dispose of sewage or to construct a sewage system. That is not to say that the constitution forecloses the possibility of counties having sewage treatment powers; on the contrary, section 18 of article V states in pertinent part:

> The County Commissioners so chosen, with the
> County Judge as presiding officer, shall compose
> the County Commissioners Court, which shall

> exercise such powers and jurisdiction over all
> county business, <u>as is conferred by this
> Constitution and the laws of the State, or as may
> be hereafter prescribed</u>.   (Emphasis added).

It is well settled, however, that this constitutional provision does not confer on commissioners courts any general authority over county business; instead, it limits their authority to that conferred by the statutes or constitution.   <u>Anderson v. Wood</u>, 152 S.W.2d 1084 (Tex. 1941); Attorney General Opinion No. C-772 (1966).

Article XI, section 7 of the Texas Constitution alludes to county sewage power for counties on the gulf coast.  It provides in part:

> All counties and cities bordering on the
> coast of the Gulf of Mexico are hereby authorized
> upon a vote of the majority of the resident
> property taxpayers voting thereon at an election
> called for such purpose to levy and collect such
> tax <u>for</u> construction of sea walls, breakwaters, or
> <u>sanitary purposes</u>, as may now or may hereafter be
> authorized by law, and may create a debt for such
> works and issue bonds in evidence thereof.
> (Emphasis added).

None of the reported Texas cases discussing article XI, section 7 involve county sewage disposal authority.  The only statutes enacted pursuant to this provision pertain to sea walls, breakwaters, and levees.   <u>See</u> V.T.C.S. arts. 6830-6839g.   None of these statutes relates to county sewage disposal powers.

There is no general Texas statute which expressly authorizes counties to singly dispose of sewage or to construct, own or operate a sewage treatment works.  Article 4418f, V.T.C.S., has been relied upon for the existence of county sewage treatment powers.  Attorney General Opinions MW-115 (1979); M-1049 (1972).  Article 4418f provides in pertinent part:

> The Commissioners Court of any County shall
> have the authority to appropriate and expend money
> from the general revenues of its County for and in
> behalf of public health and sanitation within its
> County.

Under article 4418f, however, expenditures for "public health" and "sanitation" within a county must come from the county's general revenues.  Article 4418f grants no authority to issue bonds, and neither expressly nor implicitly grants sewage treatment powers to counties.

In Attorney General Opinion M-1049 (1972), this office concluded that:

> [a]   county has authority to plan, construct, operate and maintain an area or regional waste water collection and treatment system and to perform water quality management functions alone, or in conjunction with or under contract with the United State Government, or any agencies thereof, cities and towns within the county, or other counties, Regional Planning Commissions, water districts or authorities, and the Texas Water Quality Board.

This opinion correctly begins with the premise that counties have only those powers which are expressly or impliedly conferred by the constitution and statutes. The logic of the opinion and the legal authorities it cites do not, however, support its generalized conclusion.

In support of the conclusion that a county may act alone in exercising sewage disposal powers, the opinion relies on article V, section 18 and article XI, section 7 of the Texas Constitution, and article 2351, subdivision 15 and article 4418f, V.T.C.S. Article V, section 18 of the constitution confers no power upon counties, however; instead, it grants the county commissioners court limited jurisdiction "over all county business, as is conferred by this constitution and the laws of the state, or as may be hereafter prescribed." (Emphasis added). See Mills County v. Lampasas, supra. Article XI, section 7 fails to support the conclusion in that it merely authorizes the legislature to empower counties to levy and collect a tax for sanitary purposes. The legislature has not enacted any general statute pursuant to this provision which relates to county authority to dispose of sewage or construct a sewage system. Article 2351, subdivision 15, states:

> Said court shall have all such other powers and jurisdiction, and shall perform all such other duties, as are now or may hereafter be prescribed by law.   (Emphasis added).

This subdivision grants counties no authority to dispose of sewage or to construct a sewage system; instead, as a statutory equivalent of article V, section 18 of the constitution, it designates the commissioners court as the administrative body to carry out the general powers and duties of a county, as specified by law. Finally, article 4418f fails to expressly grant counties any sewage disposal authority and such authority is not necessarily implied from the narrow scope of the powers expressly granted.

We conclude, therefore, that when Attorney General Opinion M-1049 (1972) was decided, insufficient authority existed to support its conclusion that a county, acting alone, can exercise sewage disposal powers or construct a sewage system. For the following reasons, we conclude that there is also insufficient authority for this conclusion today. We therefore overrule Attorney General Opinion M-1049 (1972) to the extent that it conflicts with this opinion.

Five years after Attorney General Opinion M-1049 (1972) was issued, the Sixty-fifth Legislature enacted Senate Bill No. 1139, which enacted, inter alia, sections 17.001 et seq. of the Water Code. Section 17.284 provides in pertinent part that:

> (a) In order to obtain financial assistance under this subchapter, a political subdivision may authorize and issue revenue bonds for the purpose of constructing treatment works and sell such bonds to the board in such amounts as may be determined by the governing body of the political subdivision and approved by the board. (Emphasis added).

Section 17.274 provides that:

> A political subdivision may apply to the board for financial assistance and may use water quality enhancement funds for construction of treatment works in the manner provided in this subchapter. (Emphasis added).

Section 17.272 states that:

> (2) 'Treatment works' means any devices and systems used in the storage, treatment, recycling, and reclamation of waste....
>
> ....
>
> (4) 'Water quality enhancement funds' means the proceeds from the sale of Texas Water Development Bonds issued under the authority of Article III, Section 49-d-1, as amended, of the Texas Constitution.
>
> (5) 'Political subdivision' means... a county....

Section 17.001 provides that "waste" has the same meaning as is provided in section 26.001. Section 26.001(6) provides that:

'Waste' means sewage, industrial waste, municipal waste, recreational waste, agricultural waste, or other waste, as defined in this section.

These sections of the Water Code cannot, in our opinion, be construed as conferring upon counties any substantive authority to issue bonds to construct a sewage treatment works. They merely provide that a political subdivision with substantive authorization acquired from other statutes may sell such bonds to the Texas Water Development Board in order to obtain needed financing. In other words, if a political subdivision has been otherwise authorized to issue bonds to construct a sewage treatment works, it may negotiate a sale of those bonds to the Texas Water Development Board, rather than making a public offering of the bonds. Thus, a political subdivision without the creditworthiness to go to the public market can obtain needed financing at a lower interest cost from the board which was in part established for providing such aid.

If we assume, arguendo, that section 17.284 does confer substantive authority upon counties to issue bonds for sewage treatment works, this question would arise: what procedures would be utilized to issue the bonds? For example, section 17.284 is silent as to whether the bonds would require a referendum or could be issued without voter approval, and whether the bonds will be tax-supported or paid out of revenues. Substantive statutes conferring authorization to issue bonds always provide for these basic features. See, e.g., V.T.C.S. art. 1111 et seq. (waterworks and sewer systems); art. 1187f (city-owned harbor facilities). Such statutes also either contain provisions for various funds to be maintained to retire the bonded indebtedness and various other procedures which must be followed in issuing bonds or incorporate by reference statutes containing such procedures. See V.T.C.S. art. 1111 et seq. (various reserve, interest and sinking funds to be maintained to insure debt service on waterworks and sewer system bonds, investment provisions, attorney general's approval, etc.); art. 1187f (incorporating article 1111 procedures). Indeed, there is no need to look beyond sections 17.001 et seq. of the Water Code in 1977. A study of sections 17.011 through 17.034 of the Water Code, which provide for the issuance of bonds by the Texas Water Development Board, will reveal the provisions required for substantive authorization to issue bonds.

It is axiomatic that a county cannot incur short-term and long-term indebtedness to finance the construction, operation, or maintenance of something it is powerless to construct, operate, or maintain. Even those statutory provisions discussed above which either allude to county sewage powers or have been relied on in the past to support the existence of such powers do not contain concomitant authority to incur debt. There is no inherent power or right of a county to issue bonds. "It is not a power to be implied.

It does not exist unless expressly conferred by law." <u>Lasater v. Lopez</u>, 217 S.W. 373 (Tex. 1919).

We therefore conclude that Texas counties are not generally authorized to incur short-term and long-term indebtedness to finance the construction costs of a sewage treatment works, insure adequate operation and maintenance of the works throughout its jurisdiction, or to carry out responsibilities under an area wide water quality plan.

### S U M M A R Y

There is no general authority for a Texas county to incur short-term and long-term indebtedness to finance the construction costs of a sewage treatment works, insure adequate operation and maintenance of the works throughout its jurisdiction, or to carry out responsibilities under an area wide water quality plan.

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by D. Ladd Patillo
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Patricia Hinojosa
Jim Moellinger
D. Ladd Patillo
Susan Plettman